**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**JOHNEISHA SHELTON,**

        **Plaintiff,**

**v.**                              **Civil Action No.**   3:23cv844

**EMERGENCY COVERAGE CORPORATION,**

**and**

**MEDLYTIX, LLC,**

        **Defendants.**

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, the Plaintiff, Johneisha Shelton ("Ms. Shelton" or "Plaintiff"), on behalf of herself and all others similarly situated, through undersigned counsel, and for her Complaint against the Defendants, Emergency Coverage Corp. ("ECC") and Medlytix, LLC ("Medlytix"), (collectively, "Defendants") pleads the following:

### INTRODUCTION AND PRELIMINARY STATEMENT

1.      Ms. Shelton, like many Virginians of modest means, receives Medicaid benefits administered by a managed care organization (MCO).

2.      After she was in a car accident and sought emergency treatment, Defendants endeavored to use her Medicaid status against her so Defendant ECC could collect an exorbitant charge from a settlement she recovered in a personal injury action against the at-fault driver.

3.      Defendants falsely insisted that (1) Plaintiff's Medicaid MCO plan afforded her no coverage for her emergency care provided through Defendant ECC and (2) she must pay multiples of the reasonable rate for that care because she receives Medicaid benefits.

4.    The amount Defendants demanded from Plaintiff for the services provided dwarfs the amount Defendant ECC routinely accepts from Medicaid for the same services. It is multiples of the amount received by Defendant ECC for the same services from Medicare and private insurers. Defendants have weaponized Medicaid's third-party liability requirements to extract excessive charges from Medicaid beneficiaries who seek emergency treatment after car accidents.

5.    The "charges" assessed to Plaintiff for her treatment by Dr. Nevan Chang, an emergency physician employed by Defendant ECC, bear no relation to the reasonable charges for the services provided. These "charges" are multiples of Defendant ECC's "actual costs of paying for clinicians and support services." Pro Publica, *How Rich Investors, Not Doctors Profit From Marking Up ER Bills* (June 12, 2020), available at https://www.propublica.org/article/how-rich-investors-not-doctors-profit-from-marking-up-er-bills (last accessed on Dec. 11, 2023). They are made up figures intended to feather the nest of the private-equity colossus, Blackstone, which owns TeamHealth, Inc., the parent company of Defendant ECC.

6.    As detailed below, federal and state law and Defendant ECC's contractual obligations with Medicaid MCOs prohibit the scheme employed by Defendants to collect outsized service charges from Medicaid recipients.

7.    Ms. Shelton brings this lawsuit on a class action basis to recover funds for excessive emergency provider charges unlawfully collected by Defendants from Medicaid recipients. To recover these improperly collected funds, she asserts claims for breach of contract, breach of implied contract, unjust enrichment, and violations of the Virginia Consumer Protection Act, Va. Code § 59.1-196 *et seq.* ("VCPA") and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA").

## JURISDICTION AND VENUE

8.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331, and the FDCPA, 15 U.S.C. § 1692k(d), and has supplemental jurisdiction of the state law claims regarding the same transaction and events under § 28 U.S.C 1367(a).

9.      Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) as "a substantial part of the events or omissions giving rise to the claim occurred" in this Division of this Court. *Id.* Ms. Shelton is a resident of this Division.

10.      Defendant Medlytix, upon information and belief, regularly manages and administers debt collection for alleged defaulted medical billing and insurance claims for payment on behalf of Defendant ECC for medical services provided within the Commonwealth of Virginia, involving the citizens of the Commonwealth of Virginia, and as such, Defendant Medlytix, is subject to the personal jurisdiction of this Court as authorized by Virginia Code § 8.01-328.1(A)(1–2). Defendant Medlytix regularly engages and solicits business in Virginia and derives substantial revenue from services rendered in Virginia. Defendant Medlytix provide services to numerous healthcare providers in Virginia. Defendant Medlytix either caused tortious injury to Plaintiff by an act or omission in Virginia or by an act or omission outside of Virginia. In either case, Medlytix is subject to the personal jurisdiction of this Court as authorized by Virginia Code § 8.01-328.1(A)(3-4).

## PARTIES

11.      Plaintiff Johneisha Shelton is an adult individual and a resident and domiciliary of the Commonwealth of Virginia. Plaintiff is a "consumer" as defined and governed by the FDCPA. 15 U.S.C. § 1692a(3).

12.     Defendant ECC is a Tennessee stock corporation which conducts its business within the Commonwealth of Virginia and maintains its principal place of business located at 265 Brookview Centre Way, Suite 400, Knoxville, TN, 37919. Defendant ECC is registered to do business in the Commonwealth of Virginia through the State Corporation Commission and maintains a registered agent in Richmond, Virginia.

13.     Defendant Medlytix is a Georgia limited liability company with its principal office located at 675 Mansell Road, Suite 100, Roswell, GA, 30076. It transacts business throughout the United States and in Virginia. Medlytix is a "debt collector" as defined by the FDCPA. 15 U.S.C. § 1692a(6).

## FACTUAL ALLEGATIONS

### *Ms. Shelton's Experience*

14.     On December 18, 2021, Plaintiff was involved in a motor vehicle collision.

15.     As a result of the collision, Plaintiff sustained bodily injuries.

16.     Plaintiff subsequently filed an injury claim against the at-fault driver.

17.     On the day of the collision, Plaintiff went to the emergency room at Chippenham Hospital in Richmond, Virginia, for treatment of her injuries.

18.     Dr. Nevan Chang, an emergency physician employed by Defendant ECC, rendered medical services to Plaintiff at the emergency room for injuries sustained in the December 18, 2021, motor vehicle collision.

19.     At the time of the treatment rendered by Dr. Nevan Chang, Plaintiff was a Medicaid beneficiary, whose benefits were administered by the MCO, Virginia Premier.

20.     When Plaintiff went to the emergency room, she provided her Virginia Premier Medicaid information to the appropriate healthcare staff. Chippenham Hospital logged Plaintiff's

Virginia Premier plan information into its computer systems and made this information available to Defendant ECC.

21.     Because Defendant ECC cannot practice medicine in the Commonwealth of Virginia, it cannot have been the original creditor as to any amount purportedly owed by Plaintiff. *Parikh v. Fam. Care Ctr., Inc.*, 273 Va. 284, 290, 641 S.E.2d 98, 101 (2007) (Virginia law prohibits a non-professional corporation from engaging in the practice of medicine).

22.     Defendant ECC has asserted that she owed money for treatment by Dr. Chang and that this money was not paid.

23.     Thus, Defendant ECC considered Plaintiff was in default on paying a consumer debt.

24.     On October 25, 2022, Plaintiff settled her underlying personal injury claim.

25.     Defendant ECC claimed a purported charge of $1,177.00 for the services rendered at Chippenham Hospital.

26.     The amount of $1,177.00 claimed by Defendant ECC for Dr. Chang's services was significantly inflated for one or more of the following reasons:

A.     The amount was unreasonably high for the services rendered.

B.     If Dr. Chang was an in-network provider for Plaintiff's Medicaid plan from Virginia Premier, Defendant ECC contractually agreed to limit the amount recoverable from Plaintiff for the services rendered by Dr. Chang to the negotiated rate for such services offered by Virginia Premier, and Plaintiff was an intended third-party beneficiary of any provider contract with Virginia Premier.

C.     If Dr. Chang was an in-network provider for Plaintiff's Virginia Premier plan, Virginia Code § 8.01-27.5(B) required Dr. Chang and Defendant ECC to submit their

claim to Virginia Premier or forfeit their ability to collect any claimed charges from Plaintiff. Further, 42 U.S.C. § 1396(a)(25)(C) prohibited Dr. Chang and Defendant ECC from seeking payment for more than the amount equal to the payment rate payable to the state medical assistance plan provided by the Virginia Department of Medical Assistance. *Id.*

D.    If Dr. Chang was not an in-network provider for Plaintiff's plan from Virginia Premier, federal law prohibited him or Defendant ECC from recovering more than the rate for such services provided for in the state agency fee schedule. 42 U.S.C. § 1396u-2(b)(2)(D) ("Any provider of emergency services that does not have in effect a contract with a Medicaid MCO that establishes payment amounts for services furnished to a beneficiary enrolled in the entity's Medicaid MCO plan must accept as payment in full no more than the amounts (less any payments for indirect costs of medical education and direct costs of graduate medical education) that it could collect if the beneficiary received medical assistance under this subchapter other than through enrollment in such an entity."); 12 Va. Admin. Code § 30-80-30 (requiring emergency providers to accept the *lesser* of the state agency fee schedule or "actual charge (charge to the general public)").

27.    At the time of settlement of Plaintiff's personal injury claim, Defendant ECC falsely claimed that Plaintiff owed it $1,177.00.

28.    Plaintiff's other charges incurred from Chippenham Hospital and Radiology Associates of Richmond from her emergency room visit were adjusted and paid by her Virginia Premier Medicaid plan. These providers followed the law and accepted payments negotiated by Virginia Premier and refrained from seeking illegal payment amounts. 42 U.S.C. § 1396u-2(b)(2)(D); *see also* 42 U.S.C. § 1396a(a)(25)(C); 42 C.F.R. § 447.15 ("[a] State plan must provide

that the Medicaid agency must limit participation in the Medicaid program to providers who accept, as payment in full, the amounts paid by the agency plus any deductible, coinsurance or copayment required by the plan to be paid by the individual.").

29.    At some point during the pendency of the underlying injury claim, at a time when Defendant ECC considered Plaintiff's obligation to pay for treatment provided by Dr. Chang to be in default, Defendant ECC engaged Defendant Medlytix to manage the collection of the phantom $1,177.00 balance on behalf of Defendant ECC. Acting on its own and as agent for Defendant ECC, Defendant Medlytix demanded that Plaintiff's counsel pay the inflated $1,177.00 balance for the services rendered by Dr. Chang on behalf of Defendant ECC.

30.    On December 8, 2022, Plaintiff's counsel authored a letter addressed to Defendant ECC and emailed and faxed this letter to Defendant Medlytix disputing Plaintiff's responsibility for the balance claimed on behalf of Defendant ECC.

31.    Rather than risk legal action or damage to her credit, Plaintiff subsequently paid the full amount of the charge, $1,177.00, from Defendant ECC.

## CLAIMS FOR RELIEF

### COUNT I

### DEFENDANT ECC – BREACH OF CONTRACT

32.    Plaintiff incorporates the above stated paragraphs by reference.

33.    Defendant ECC, through Dr. Chang or on its own, entered into a provider agreement with Virginia Premier.

34.    Virginia Premier enters into its provider agreements to provide its MCO members access to those providers at negotiated rates.

35. Defendant ECC's provider agreement specifically contemplated the provision of services, in accordance with that agreement, by Defendant ECC to Virginia Premier plan members like Plaintiff.

36. Defendant ECC specifically agreed in its provider agreement with Virginia Premier to provide services to plan members like Plaintiff at specific reimbursement rates set out by Virginia Premier.

37. Defendant ECC's provider agreement with Virginia Premier limited its reimbursement rates for the services provided by Dr. Chang to a fraction of the $1,177.00 claimed by Defendant ECC as Plaintiff's defaulted obligation.

38. Defendant ECC's provider agreement with each MCO under which it provides services limited its reimbursement rates for services provided to Medicaid MCO plan members to a fraction of the amounts claimed by Defendant ECC as the obligations of members of the Breach of Contract Class set forth below.

39. **The Breach of Contract Class**. Pursuant to Fed. R. Civ. P. 23, Plaintiff brings this action individually and on behalf of a class of which she is a member and initially defined:

> All natural persons who (a) received services at an emergency room from an emergency provider employed by Defendant ECC in the five years before the filing of this action; (b) were Medicaid managed care organization plan members in Virginia at the time of such services; and (c) paid Defendant ECC money in excess of the negotiated rate(s) for such service(s) provided for by the applicable managed care organization provider agreement.

> Excluded from the class are all persons who have signed a written release of their claim, and/or are counsel in this case, or employed by the Federal Judiciary.

40. **Numerosity**. Plaintiff alleges that the Breach of Contract Class is so numerous that joinder of the claims of all class members is impractical. Defendant ECC staffs numerous emergency rooms in Virginia with its providers treating thousands of individuals per year, so the

class size will easily exceed hundreds of Virginians. The names and addresses of the class members are identifiable through documents maintained by Defendant ECC, and the class members may be notified of the pendency of this action by publication or mailed notice.

41.     **Existence and Predominance of Common Questions of Law and Fact**. Common questions of law and fact exist as to all putative class members. These questions predominate over the questions affecting only individual members. These common legal and factual questions include, among other things: (a) whether Defendant ECC's contracts with MCOs inure to the benefit of patients receiving emergency services from providers employed by Defendant ECC; and (b) whether Defendant ECC's contracts with MCOs limited the reimbursement rate for emergency services.

42.     **Typicality**. Plaintiff's claims are typical of the claims of each putative class member and all are based on the same facts and legal theories. Plaintiff, as every putative class member, alleges a violation of a standard provider agreement entered into by Defendant ECC with Medicaid MCOs in Virginia. This claim challenges the ability of Defendant ECC to collect money in excess of the reimbursement rates provided for in these standard contracts. Plaintiff seeks recovery of funds paid in excess of the reimbursement rates. The recovery of class contract damages is ideal and appropriate in circumstances like this one, where injuries are particularized and concrete, but modest. In addition, Plaintiff is entitled to the relief under the same causes of action as the other members of the Breach of Contract Class.

43.     **Adequacy**. Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling actions involving unlawful practices against consumers and class actions. Neither Plaintiff nor her counsel have any interests that might cause

them not to vigorously pursue this action. Plaintiff is aware of her responsibilities to the putative class and has accepted those responsibilities.

44.     Certification of the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

A.     As alleged above, the questions of law or fact common to the members of the class predominate over any questions affecting an individual member. Each of the common facts and legal questions in the case overwhelm the more modest individual issues. Given the complex and extensive litigation necessitated by Defendant's conduct, using individual prosecution to obtain the modest damages sought by each member would prove burdensome and expensive. Further, those individual issues that do exist can be effectively streamlined and resolved in a manner that minimizes the individual complexities and differences in proof in the case.

B.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Consumer claims generally are ideal for class treatment as they involve many consumers who are otherwise disempowered and unable to afford to bring their claims individually. Further, most consumers affected by Defendant's conduct described above are likely unaware of their rights under the law or of whom they could find to represent them in federal litigation. Individual litigation of the uniform issues in this case would be a waste of judicial resources. The issues at the core of this case are class wide and should be resolved at one time. One win for one consumer would set the law for every similarly situated consumer.

45.     Defendant ECC breached its provider agreements, as to which Plaintiff and the members of the Breach of Contract Class were intended third-party beneficiaries, by demanding

and collecting charges for services exceeding the negotiated amounts for such services set forth in its provider agreements.

46.     Plaintiff and each member of the Breach of Contract Class are entitled to recover damages for Defendant ECC's breaches of its provider agreements.

## COUNT II

### UNJUST ENRICHMENT

47.     Plaintiff incorporates the paragraphs set forth above before **CLAIMS FOR RELIEF** by reference.

48.     **The Unjust Enrichment Class**. Pursuant to Fed. R. Civ. P. 23, Plaintiff brings this action individually and on behalf of a class of which she is a member and initially defined:

> All natural persons who (a) received services at an emergency room from an emergency provider employed by Defendant ECC in the three years before the filing of this action; (b) were Medicaid managed care organization plan members in Virginia at the time of such services; and (c) paid Defendant ECC money in excess of the lesser of DMAS fee schedule amount or the actual charge (charge to general public) for the services rendered by the emergency provider employed by Defendant ECC.

> Excluded from the class are all persons who have signed a written release of their claim, and/or are counsel in this case, or employed by the Federal Judiciary.

49.     **Numerosity**. Plaintiff alleges that the Unjust Enrichment Class is so numerous that joinder of the claims of all class members is impractical. Defendant ECC staffs numerous emergency rooms in Virginia with its providers treating thousands of individuals per year, so the class size will easily exceed hundreds of Virginians. The names and addresses of the class members are identifiable through documents maintained by Defendant ECC, and the class members may be notified of the pendency of this action by publication or mailed notice.

50.     **Existence and Predominance of Common Questions of Law and Fact**. Common questions of law and fact exist as to all putative class members. These questions predominate over

the questions affecting only individual members. These common legal and factual questions include, among other things: (a) whether Defendant ECC's contracts with MCOs inure to the benefit of patients receiving emergency services from providers employed by Defendant ECC; and (b) whether federal and state law prohibited Defendant ECC from demanding and collecting payments in excess of the lesser of the DMAS fee schedule amount or the actual charge (charge to the general public).

51.    **Typicality**. Plaintiff's claims are typical of the claims of each putative class member and all are based on the same facts and legal theories. Plaintiff, as every putative class member, alleges a violation of federal and state law for Defendant ECC's demand and collection of charges in excess of the legally permitted amounts. This claim challenges the ability of Defendant ECC to collect money for services in excess of the amounts set by law for such services. The recovery of class unjust enrichment damages is ideal and appropriate in circumstances like this one, where injuries are particularized and concrete, but modest. In addition, Plaintiff is entitled to the relief under the same causes of action as the other members of the Unjust Enrichment Class.

52.    **Adequacy**. Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling actions involving unlawful practices against consumers and class actions. Neither Plaintiff nor her counsel have any interests that might cause them not to vigorously pursue this action. Plaintiff is aware of her responsibilities to the putative class and has accepted those responsibilities.

53.    Certification of the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

A.    As alleged above, the questions of law or fact common to the members of the class predominate over any questions affecting an individual member. Each of the

common facts and legal questions in the case overwhelm the more modest individual issues. Given the complex and extensive litigation necessitated by Defendant's conduct, using individual prosecution to obtain the modest damages sought by each member would prove burdensome and expensive. Further, those individual issues that do exist can be effectively streamlined and resolved in a manner that minimizes the individual complexities and differences in proof in the case.

B.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Consumer claims generally are ideal for class treatment as they involve many consumers who are otherwise disempowered and unable to afford to bring their claims individually. Further, most consumers affected by Defendant's conduct described above are likely unaware of their rights under the law or of whom they could find to represent them in federal litigation. Individual litigation of the uniform issues in this case would be a waste of judicial resources. The issues at the core of this case are class wide and should be resolved at one time. One win for one consumer would set the law for every similarly situated consumer.

54.    As a result of its improper demand and collection of impermissible payments in excess of the amount allowed under federal and state law, Defendant ECC obtained monies which rightfully belong to Plaintiff and the members of the Unjust Enrichment Class.

55.    Defendant ECC appreciated, accepted, and retained the non-gratuitous benefits conferred by Plaintiff and each member of the Unjust Enrichment Class who tendered excess payment amounts to Defendant ECC despite federal and state laws prohibiting collections of such payment amounts.

56.    It would be inequitable and unjust for Defendant ECC to retain wrongfully obtained payments from Plaintiff and the Unjust Enrichment Class.

57.    Defendant ECC's retention of these wrongfully obtained payments would violate the fundamental principles of justice, equity, and good conscience.

58.    Plaintiff and the Unjust Enrichment Class members are entitled to restitution of the payments unjustly obtained plus interest.

### COUNT III

### DEFENDANT ECC – BREACH OF IMPLIED CONTRACT

59.    Plaintiff incorporates the paragraphs set forth above before **CLAIMS FOR RELIEF** by reference.

60.    **The Implied Contract Class**. Pursuant to Fed. R. Civ. P. 23, Plaintiff brings this action individually and on behalf of a class of which she is a member and initially defined:

> All natural persons who (a) received services at an emergency room from an emergency provider employed by Defendant ECC in the three years before the filing of this action; (b) were Medicaid managed care organization plan members in Virginia at the time of such services; and (c) paid Defendant ECC money in excess of the reasonable compensation for the services provided by the emergency provider employed by Defendant ECC.

> Excluded from the class are all persons who have signed a written release of their claim, and/or are counsel in this case, or employed by the Federal Judiciary.

61.    **Numerosity**. Plaintiff alleges that the Implied Contract Class is so numerous that joinder of the claims of all class members is impractical. Defendant ECC staffs numerous emergency rooms in Virginia with its providers treating thousands of individuals per year, so the class size will easily exceed hundreds of Virginians. The names and addresses of the class members are identifiable through documents maintained by Defendant ECC, and the class members may be notified of the pendency of this action by publication or mailed notice.

14

62.    **Existence and Predominance of Common Questions of Law and Fact**. Common questions of law and fact exist as to all putative class members. These questions predominate over the questions affecting only individual members. These common legal and factual questions include, among other things: (a) whether implied contracts existed for the services performed by emergency service providers employed by Defendant ECC; and (b) whether the amounts collected by Defendant ECC for emergency provider services were reasonable.

63.    **Typicality**. Plaintiff's claims are typical of the claims of each putative class member and all are based on the same facts and legal theories. Plaintiff, as every putative class member, alleges a breach of implied contract for Defendant ECC's demand and collection of charges in excess of the reasonable amount for the services provided. This claim challenges the ability of Defendant ECC to collect money for services in excess of the reasonable amount (under the law) for such services. The recovery of class damages for breach of implied contracts is ideal and appropriate in circumstances like this one, where injuries are particularized and concrete, but modest. In addition, Plaintiff is entitled to the relief under the same causes of action as the other members of the Breach of Implied Contract Class.

64.    **Adequacy**. Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling actions involving unlawful practices against consumers and class actions. Neither Plaintiff nor her counsel have any interests that might cause them not to vigorously pursue this action. Plaintiff is aware of her responsibilities to the putative class and has accepted those responsibilities.

65.    Certification of the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

A.      As alleged above, the questions of law or fact common to the members of the class predominate over any questions affecting an individual member. Each of the common facts and legal questions in the case overwhelm the more modest individual issues. Given the complex and extensive litigation necessitated by Defendant's conduct, using individual prosecution to obtain the modest damages sought by each member would prove burdensome and expensive. Further, those individual issues that do exist can be effectively streamlined and resolved in a manner that minimizes the individual complexities and differences in proof in the case.

B.      A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Consumer claims generally are ideal for class treatment as they involve many consumers who are otherwise disempowered and unable to afford to bring their claims individually. Further, most consumers affected by Defendant's conduct described above are likely unaware of their rights under the law or of whom they could find to represent them in federal litigation. Individual litigation of the uniform issues in this case would be a waste of judicial resources. The issues at the core of this case are class wide and should be resolved at one time. One win for one consumer would set the law for every similarly situated consumer.

66.     Under Virginia law, "[w]here service is performed by one, at the instance and request of another, and . . . nothing is said between the parties as to compensation for such service, the law implies a contract, that the party who performs the services shall be paid a reasonable compensation therefore." *Mongold v. Woods*, 278 Va. 196, 203, 677 S.E.2d 288 (2009) (quoting *Rea's Adm'x v. Trotter*, 67 Va. (26 Gratt.) 585, 592 (1875)).

67.     Defendant ECC breached its implied contracts with Plaintiff and the members of the Breach of Implied Contract Class, by demanding and collecting charges for services exceeding "the reasonable value of the services provided." *T. Musgrove Constr. Co., Inc. v. Young*, 298 Va. 480, 486, 840 S.E.2d 337, 341 (2020)

68.     Plaintiff and each member of the Implied Breach of Contract Class are entitled to recover damages for Defendant ECC's breaches of its implied contracts with them.

### COUNT IV

#### ALL DEFENDANTS – VIOLATIONS OF THE VIRGINIA CONSUMER PROTECTION ACT

69.     Plaintiff incorporates the above stated paragraphs by reference.

70.     Plaintiff incorporates the paragraphs set forth above before **CLAIMS FOR RELIEF** by reference.

71.     **The VCPA Class**. Pursuant to Fed. R. Civ. P. 23, Plaintiff brings this action individually and on behalf of a class of which she is a member and initially defined:

> All natural persons who (a) received services at an emergency room from an emergency provider employed by Defendant ECC; (b) were Medicaid managed care organization plan members in Virginia at the time of such services; and (c) paid Defendant ECC any amount of money in the two years before the filing of this action for the services provided by the emergency provider employed by Defendant ECC.

> Excluded from the class are all persons who have signed a written release of their claim, and/or are counsel in this case, or employed by the Federal Judiciary.

72.     **Numerosity**. Plaintiff alleges that the VCPA Class is so numerous that joinder of the claims of all class members is impractical. Defendant ECC staffs numerous emergency rooms in Virginia with its providers treating thousands of individuals per year, so the class size will easily exceed hundreds of Virginians. The names and addresses of the class members are identifiable

through documents maintained by Defendant ECC, and the class members may be notified of the pendency of this action by publication or mailed notice.

73.     **Existence and Predominance of Common Questions of Law and Fact**. Common questions of law and fact exist as to all putative class members. These questions predominate over the questions affecting only individual members. These common legal and factual questions include, among other things: (a) whether Defendant ECC was legally required, under Virginia Code § 8.01-27.5 to submit claims to Medicaid MCOs for emergency provider services; (b) whether Defendant ECC submitted claims to Medicaid MCOs for emergency providers; and (c) whether Defendant ECC illegally collected payments for services that should have been reimbursed based on claims submitted to Medicaid MCOs.

74.     **Typicality**. Plaintiff's claims are typical of the claims of each putative class member and all are based on the same facts and legal theories. Plaintiff, as every putative class member, alleges a violation of the VCPA for Defendant ECC's demand and collection of charges disallowed by the operation of Virginia Code § 8.01-27.5. This claim challenges the ability of Defendant ECC to collect money for services when it failed to submit claims to Medicaid MCOs for such services. The recovery of class VCPA actual, statutory, and treble damages is ideal and appropriate in circumstances like this one, where injuries are particularized and concrete, but modest. In addition, Plaintiff is entitled to the relief under the same causes of action as the other members of the VCPA Class.

75.     **Adequacy**. Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling actions involving unlawful practices against consumers and class actions. Neither Plaintiff nor her counsel have any interests that might cause

them not to vigorously pursue this action. Plaintiff is aware of her responsibilities to the putative class and has accepted those responsibilities.

76.    Certification of the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

A.    As alleged above, the questions of law or fact common to the members of the class predominate over any questions affecting an individual member. Each of the common facts and legal questions in the case overwhelm the more modest individual issues. Given the complex and extensive litigation necessitated by Defendant ECC's conduct, using individual prosecution to obtain the modest damages sought by each member would prove burdensome and expensive. Further, those individual issues that do exist can be effectively streamlined and resolved in a manner that minimizes the individual complexities and differences in proof in the case.

B.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Consumer claims generally are ideal for class treatment as they involve many consumers who are otherwise disempowered and unable to afford to bring their claims individually. Further, most consumers affected by Defendant ECC's conduct described above are likely unaware of their rights under the law or of whom they could find to represent them in federal litigation. Individual litigation of the uniform issues in this case would be a waste of judicial resources. The issues at the core of this case are class wide and should be resolved at one time. One win for one consumer would set the law for every similarly situated consumer.

77.    Virginia Code § 8.01-27.5 prescribes the duty of in-network health care providers to submit claims to health insurers.

78.    Medicaid health insurance is explicitly contemplated in Virginia Code § 8.01-27.5(A), which reads: "Health care policy includes coverages issued pursuant to… Title XIX of the Social Security Act, 42 U.S.C. § 1396 et seq. (Medicaid) . . . ."

79.    Virginia Code § 8.01-27.5(B) provides:

"An in-network provider that provides health care services to a covered patient shall submit its claim to the health insurer for the health care services in accordance with the terms of the applicable provider agreement or as permitted under applicable federal or state laws or regulations, provided that the covered patient provides the in-network provider with information required by the terms of the covered patient's health care policy's plan documents, including the information that is required to verify the individual's coverage under the health care policy, within not fewer than 21 business days before the deadline for the in-network provider to submit its claim to the health insurer as required by the terms of the provider agreement. If an in-network provider does not submit its claim to the health insurer in accordance with the requirements of this subsection, then (i) the covered patient shall have no obligation to pay for health care services for which the in-network provider was required to submit its claim, (ii) the in-network provider shall not have the benefit of the liens provided by §§ 8.01-66.2 and 8.01-66.9 with regard to health care services for which the in-network provider was required to submit its claim, and (iii) the in-network provider shall be prohibited from recovering payment for any of the health care services for which it was required to submit its claim from an insurer providing medical expense benefits to the covered patient under a policy of motor vehicle liability insurance pursuant to § 38.2-2201, by exercising an assignment of the covered patient's rights to the medical expense benefits or by other means."

80.    Put simply, for the purposes of this action, under Virginia Code § 8.01-27.5(B), the patient is not financially responsible for the charges incurred if the provider fails to timely submit the charge to the patient's health insurance carrier.

81.    Virginia Code § 8.01-27.5 defines an "in-network provider" as one that "is employed by or has entered into a provider agreement with the health insurer that has issued the health care policy or is a participating provider with such health insurer, under which agreement or conditions of participation the health care provider has agreed to provide health care services to covered patients."

82.    Upon information and belief, Defendant ECC is an "in-network provider" with Virginia Premier.

20

83.     When Plaintiff and members of the VCPA Class went to emergency rooms and received services from emergency providers employed by Defendant ECC, their Medicaid MCO coverage was ascertained by Defendant ECC.

84.     Under Virginia Code § 8.01-27.5, Defendant ECC was required to submit its charges as to Plaintiff and the VCPA Class to the appropriate Medicaid MCOs providing coverage to such individuals.

85.     Defendant ECC never submitted claims to the appropriate Medicaid MCOs, as to Plaintiff and the VCPA Class, because it believed that it could extract excessive charges if it never submitted claims to these MCOs.

86.     Virginia Code § 8.01-27.5 prohibited Defendant ECC from collecting any amounts from the Plaintiff and the VCPA Class.

87.     Virginia Code § 8.01-27.5 provides that "[a]ny knowing violation of the provisions of this section shall constitute a prohibited practice in accordance with § 59.1-200 and shall be subject to any and all of the enforcement provisions of the Virginia Consumer Protection Act (§59.1-196 et seq.)."

88.     Virginia Code § 59.1-200(A)(67) (i.e., the VCPA) provides that a knowing violation of § 8.01-27.5 is a fraudulent and unlawful act.

89.     Defendant ECC is a seller regulated by the VCPA.

90.     Plaintiff and the class she seeks to represent received medical treatment as part of a consumer transaction regulated by the VCPA.

91.     Virginia Code § 59.1-204(A) provides that "[a]ny person who suffers a loss as the result of a violation of this chapter shall be entitled to initiate an action to recover actual damages or $500, whichever is greater. If the trier of fact finds that the violation was willful, it may increase

damages to an amount not exceeding three times the actual damages sustained, or $1,000, whichever is greater." *Id.*

92.    Virginia Code § 59.1-204(B) provides that the person suffering a loss may also be awarded reasonable attorneys' fees and court costs.

93.    Defendant ECC was aware of its obligation to submit Plaintiff's charge to her health insurance carrier.

94.    Defendants knowingly and willfully failed to submit Plaintiff and VCPA Class members' charges to their health insurance carriers.

95.    Plaintiff and the VCPA Class paid money to Defendant ECC, thereby suffering a loss according to Virginia Code § 59.1-204(A), and they are entitled to recover the greater of their actual damages or $500 in statutory damages from Defendant ECC.

96.    Defendant ECC willfully violated the VCPA and is liable, as to Plaintiff and each member of the VCPA class, for the greater of three times the actual damages incurred or $1,000, as well as reasonable attorneys' fees and court costs.

## COUNT V

### DEFENDANT MEDLYTIX – VIOLATIONS OF THE FDCPA

97.    Plaintiff incorporates the paragraphs set forth above before **CLAIMS FOR RELIEF** by reference.

98.    **The FDCPA Class**. Pursuant to Fed. R. Civ. P. 23, Plaintiff brings this action individually and on behalf of a class of which she is a member and initially defined:

> All natural persons who (a) received services at an emergency room from an emergency provider employed by Defendant ECC; (b) were Medicaid managed care organization plan members in Virginia at the time of such services; (c) were contacted directly or indirectly by Defendant Medlytix to collect money on behalf of Defendant ECC; and (d) paid Defendant ECC any amount of money in the year

before the filing of this action in excess of the amount allowed by contract or law for the services provided by the emergency provider employed by Defendant ECC.

Excluded from the class are all persons who have signed a written release of their claim, and/or are counsel in this case, or employed by the Federal Judiciary.

99.     **Numerosity**. Plaintiff alleges that the FDCPA Class is so numerous that joinder of the claims of all class members is impractical. Defendant ECC staffs numerous emergency rooms in Virginia with its providers treating thousands of individuals per year, so the class size will easily exceed hundreds of Virginians. The names and addresses of the class members are identifiable through documents maintained by Defendant ECC, and the class members may be notified of the pendency of this action by publication or mailed notice.

100.     **Existence and Predominance of Common Questions of Law and Fact**. Common questions of law and fact exist as to all putative class members. These questions predominate over the questions affecting only individual members. These common legal and factual questions include, among other things: (a) whether Defendant ECC was prohibited by law or contract from collecting specific amounts of money from Plaintiff and the FDCPA Class members; (b) whether Defendant Medlytix demanded money on behalf of Defendant ECC in excess of the amounts allowed by law or contract;  and (c) whether Defendant ECC collected amounts of money in excess of the amounts permitted by law or contract following Medlytix collection efforts.

101.     **Typicality**. Plaintiff's claims are typical of the claims of each putative class member and all are based on the same facts and legal theories. Plaintiff, as every putative class member, alleges a violation of the FDCPA for Defendant ECC's demand and collection of charges disallowed by the operation Virginia law or contractual obligations. This claim challenges the ability of Defendant Medlytix to seek to collect money for services by Defendant ECC. The recovery of class FDCPA actual or statutory damages is ideal and appropriate in circumstances

like this one, where injuries are particularized and concrete, but modest. In addition, Plaintiff is entitled to the relief under the same causes of action as the other members of the FDCPA Class.

102.    **Adequacy**. Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling actions involving unlawful practices against consumers and class actions. Neither Plaintiff nor her counsel have any interests that might cause them not to vigorously pursue this action. Plaintiff is aware of her responsibilities to the putative class and has accepted those responsibilities.

103.    Certification of the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

A.    As alleged above, the questions of law or fact common to the members of the class predominate over any questions affecting an individual member. Each of the common facts and legal questions in the case overwhelm the more modest individual issues. Given the complex and extensive litigation necessitated by Defendant Medlytix's conduct, using individual prosecution to obtain the modest damages sought by each member would prove burdensome and expensive. Further, those individual issues that do exist can be effectively streamlined and resolved in a manner that minimizes the individual complexities and differences in proof in the case.

B.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Consumer claims generally are ideal for class treatment as they involve many consumers who are otherwise disempowered and unable to afford to bring their claims individually. Further, most consumers affected by Defendant Medlytix's conduct described above are likely unaware of their rights under the law or of whom they could find to represent them in federal litigation. Individual litigation of the uniform issues

24

in this case would be a waste of judicial resources. The issues at the core of this case are class wide and should be resolved at one time. One win for one consumer would set the law for every similarly situated consumer.

104.    As set forth above, Defendant Medlytix is a debt collector as defined in the FDCPA.

105.    Medlytix touts its ability to "increase[] account reimbursement by identifying new billable insurance coverages and moving accounts from a lower to a higher reimbursement group." *Solutions—MAXIMIZE YOUR REVENUE*, *available at* https://www.medlytix.com/primary-services/ (last accessed on Dec. 7, 2023). Medlytix provides its services on a "contingency fee bas[is], meaning [it] only gets paid when [providers] get paid." *Id.* Medlytix acts on behalf of providers like Defendant ECC to collect money from individuals like Plaintiff instead of the providers seeking reimbursement from Medicaid (be it the state plan or an MCO).

106.    Defendant Medlytix's website bluntly illustrates its practice of helping providers extract money from car crash victims instead of Medicaid MCOs:[1]



---

[1] *Solutions—MAXIMIZE YOUR REVENUE, available at* https://www.medlytix.com/primary-services/ (last accessed on Dec. 12, 2023).

107.    Defendant Medlytix violated the FDCPA by falsely demanding and seeking to collect, on behalf of Defendant ECC, amounts not permitted to be collected by contract or law. 15 U.S.C. § 1692e.

108.    Defendant Medlytix received a portion of the amounts illegally collected by Defendant ECC following Medlytix's collection efforts.

109.    Plaintiff and the FDCPA Class members were injured as a result of Defendant Medlytix's violations of the FDCPA because they paid amounts to Defendant ECC not allowed by contract or law as a result of such violations.

110.    Defendant Medlytix is liable to Plaintiff and the FDCPA Class members for their actual damages, statutory damages, costs, and attorney's fees.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff requests that the Court enter judgment on behalf of themselves and the classes they seek to represent against Defendants for:

A.    Certification for this matter to proceed as a class action;

B.    Actual, treble, and statutory damages as pleaded herein;

C.    Attorneys' fees, litigation expenses, and costs of suit; and

D.    Such other or further relief as the Court deems proper.

**TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,

**JOHNEISHA SHELTON**


/s/ Drew D. Sarrett
Drew D. Sarrett (VSB No. 81658)
**CONSUMER LITIGATION ASSOCIATES, P.C.**
620 East Broad Street, Suite 300
Richmond, Virginia 23219
P: (804) 905-9900

F: (757) 930-3662
E: drew@clalegal.com

Gianni A. Puglielli (VSB No. 97715)
Joshua Voelkel (VSB No. 95049)
**GEOFF MCDONALD & ASSOCIATES, P.C.**
8720 Stony Point Parkway, Suite 250
Richmond, Virginia 23235
P: (804) 888-8888
F: (804) 359-5426
E: gpuglielli@mcdonaldinjurylaw.com
    jvoelkel@mcdonaldinjurylaw.com

*Counsel for Plaintiff*