# UNITED STATES DISTRICT COURT
## FOR THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | | |
|---|---|---|
| **JOHNEISHA SHELTON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:23-cv-00844-MHL** |
| | ) | |
| **EMERGENCY COVERAGE CORPORATION,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **MEDLYTIX, LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANT MEDLYTIX, LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS THE FIRST AMENDED COMPLAINT <u>FOR FAILURE TO STATE A CLAIM UNDER RULE 12(b)(6)</u>

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND................................................ 2

STANDARD OF REVIEW .................................................................................. 3

ARGUMENT ...................................................................................................... 4

    I.    All of Plaintiff's claims fail because Medlytix's bill to State Farm was neither unlawful nor unreasonably high. ................................................ 4

        A.    The Medicaid statutes that Plaintiff cites do not apply here, and in any event, Plaintiff misreads the law. ......................................... 4

        B.    Plaintiff does not plausibly plead her alternative theory that the cost of her emergency care was inflated. .................................. 10

    II.    Plaintiff fails to make out a plausible RICO violation........................... 12

        A.    Plaintiff has failed to plausibly allege racketeering activity as her allegations show no misrepresentation or fraud...................................... 14

        B.    Plaintiff has not pled a pattern of racketeering activity. ......................... 16

        C.    Plaintiff fails to allege that any RICO violation caused her injury.......... 18

        D.    Plaintiff's RICO claim fails for additional reasons................................. 19

    III.    Plaintiff cannot sue for unjust enrichment. ....................................... 21

    IV.    Any FDCPA claim is time-barred and fails to state a claim............................. 21

        A.    Plaintiff's FDCPA claim is time-barred because it is based on alleged representations made more than one year before she sued. ........ 22

        B.    Medlytix is not a debt collector under the FDCPA................................ 24

        C.    Plaintiff was not the object of collection activity arising from a consumer debt. ................................................................................ 27

CONCLUSION.................................................................................................... 30

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aggarwal v. Sikka*,
No. 1:12-CV-60, 2012 WL 12870349 (E.D. Va. June 12, 2012) ...........................................17

*Akalwadi v. Risk Mmgt. Alternatives, Inc.*,
336 F. Supp. 2d 492 (D. Md. 2004) ....................................................................................22

*Al-Abood ex rel. Al-Abood v. El-Shamari*,
217 F.3d 225 (4th Cir. 2000) ......................................................................................13, 16

*Albert v. Glob. Tel\*Link*,
68 F.4th 906 (4th Cir. 2023) .................................................................................................18

*Alibrandi v. Fin. Outsourcing Servs., Inc.*,
333 F.3d 82 (2d Cir. 2003) ....................................................................................................24

*Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*,
367 F.3d 212 (4th Cir. 2004) ........................................................................................15, 16

*Arkansas Dep't of Health & Hum. Servs. v. Ahlborn*,
547 U.S. 268 (2006) ................................................................................................................7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................................3

*Baker v. Sturdy Built Mfg., Inc.*,
No. 3:07-CV-212, 2007 WL 3124881 (E.D. Va. Oct. 23, 2007) .........................................13

*Baldino's Lock & Key Serv., Inc. v. Google, Inc.*,
88 F. Supp. 3d 543 (E.D. Va. 2015), *aff'd*, 624 F. App'x 81 (4th Cir. 2015) .............13, 14, 20

*Bender v. Elmore & Throop, P.C.*,
963 F.3d 403 (4th Cir. 2020) ..........................................................................................22, 23

*Blount Fin. Servs., Inc. v. Walter E. Heller & Co.*,
819 F.2d 151 (6th Cir. 1987) ................................................................................................14

*Bourgeois v. Live Nation Ent., Inc.*,
3 F. Supp. 3d 423 (D. Md. 2014), *as corrected* (Mar. 20, 2014)...........................................20

*Bridge v. Phoenix Bond & Indem. Co.*,
553 U.S. 639 (2008)...............................................................................................................18

*Busby v. Crown Supply, Inc.*,
   896 F.2d 833 (4th Cir. 1990) ...................................................................................19

*Campbell v. Douglas Knights & Assocs., Inc.*,
   No. 21-CV-01667-JCS, 2021 WL 1734896 (N.D. Cal. May 3, 2021) ....................................28

*Ceres Marine Terminals v. Armstrong*,
   722 S.E.2d 301 (Va. App. 2012)..........................................................................11, 12

*Chambers v. King Buick GMC, LLC*,
   43 F. Supp. 3d 575 (D. Md. 2014).........................................................................19

*Colomar v. Mercy Hosp., Inc.*,
   461 F. Supp. 2d 1265 (S.D. Fla. 2006) ..................................................................11

*Coulibaly v. J.P. Morgan Chase Bank, N.A.*,
   No. 8:10-CV-3517, 2011 WL 3476994 (D. Md. Aug. 8, 2011) ..............................................14

*Edley-Worford v. Virginia Conf. of United Methodist Church*,
   430 F. Supp. 3d 132 (E.D. Va. 2019) ......................................................................3

*Evanston Hosp. v. Hauck*,
   1 F.3d 540 (7th Cir. 1993) ...............................................................................5, 6

*Fontell v. Hassett*,
   574 F. App'x 278 (4th Cir. 2014) ......................................................................24, 25

*Food Lion, Inc. v. Cap. Cities/ABC, Inc.*,
   887 F. Supp. 811 (M.D.N.C. 1995) .........................................................................17

*Galloway v. Methodist Hosps., Inc.*,
   658 N.E.2d 611 (Ind. Ct. App. 1995).......................................................................11

*GE Inv. Priv. Placement Partners II v. Parker*,
   247 F.3d 543 (4th Cir. 2001) ..........................................................................17, 18

*Gould v. ClaimAssist*,
   876 F. Supp. 2d 1018 (S.D. Ill. 2012)..................................................................26, 29

*H.J. Inc. v. Nw. Bell Tel. Co.*,
   492 U.S. 229 (1989)........................................................................................16

*Hamilton v. Avectus Health Care Sols., LLC*,
   No. 5:13-CV-01967-SGC, 2015 WL 5693610 (N.D. Ala. Sept. 29, 2015)................25, 27, 29

*Hardnett v. M&T Bank*,
   204 F. Supp. 3d 851 (E.D. Va. 2016), *aff'd sub nom.*, 699 F. App'x 242 (4th
   Cir. 2017) .............................................................................................22, 30

iii

*Hawthorne v. Mac Adjustment, Inc.*,
    140 F.3d 1367 (11th Cir. 1998) ........................................................................28

*Healthkeepers, Inc. v. Richmond Ambulance Auth.*,
    642 F.3d 466 (4th Cir. 2011) .............................................................................7

*Hemi Grp., LLC v. City of New York, N.Y.*,
    559 U.S. 1 (2010).............................................................................................19

*Hillsborough Cnty. Hosp. Auth. v. Fernandez*,
    664 So.2d 1071 (Fla. Dist. Ct. App. 1995) .....................................................11

*Johnson v. Hill*,
    965 F. Supp. 1487 (E.D. Va. 1997) .................................................................23

*Kazmi v. CCS Com., LLC*,
    No. 3:14-CV-06132, 2015 WL 4392836 (D.N.J. July 15, 2015) ...................28, 29

*Kloth v. Microsoft Corp.*,
    444 F.3d 312 (4th Cir. 2006) .............................................................................3

*Lange v. Pro. Acct. Servs., Inc.*,
    No. 3:19-CV-0150-HRH, 2020 WL 1302512 (D. Alaska Mar. 18, 2020) .......26, 27

*Lee v. Wade*,
    No. 3:15-CV-37, 2015 WL 5147067 (E.D. Va. Aug. 31, 2015) ......................26

*Mallo v. Pub. Health Tr. of Dade Cnty., Fla.*,
    88 F. Supp. 2d 1376 (S.D. Fla. 2000) ...............................................................6

*Maloy v. Phillips*,
    64 F.3d 607 (11th Cir. 1995) ...........................................................................23

*In re MasterCard Int'l Inc.*,
    313 F.3d 257 (5th Cir. 2002) ...........................................................................15

*Mattson v. U.S. W. Communications, Inc.*,
    967 F.2d 259 (8th Cir. 1992) ...........................................................................23

*McMunn v. Tatum*,
    379 S.E.2d 908 (Va. 1989).................................................................................10

*Miller v. Gorski Wladyslaw Est.*,
    547 F.3d 273 (5th Cir. 2008) .....................................................................5, 8, 9

*Mladenov v. R1 RCM Inc.*,
    No. 1:21-CV-1509, 2024 WL 230934 (N.D. Ill. Jan. 22, 2024).......................26

*MSP Recovery Claims, Series LLC v. Lundbeck LLC*,
    664 F. Supp. 3d 635 (E.D. Va. 2023) ........................................................................19

*Naas v. Stolman*,
    130 F.3d 892 (9th Cir. 1997) ....................................................................................23

*United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*,
    707 F.3d 451 (4th Cir. 2013) ......................................................................................4

*Neild v. Wolpoff & Abramson, L.L.P.*,
    453 F. Supp. 2d 918 (E.D. Va. 2006) ..............................................................13, 16

*Penn v. Cumberland*,
    883 F. Supp. 2d 581 (E.D. Va. 2012) .....................................................................26

*Philips v. Pitt Cnty. Mem'l Hosp.*,
    572 F.3d 176, 180 (4th Cir. 2009) ...........................................................................26

*Prescott v. PHH Mortg. Corp.*,
    No. 3:16-CV-288, 2017 WL 510449 (E.D. Va. Feb. 7, 2017), *aff'd*, 689 F.
    App'x 769 (4th Cir. 2017) ........................................................................................23

*Radvany v. Davis*,
    551 S.E.2d 347 (Va. 2001)........................................................................................12

*Raya v. NPAS, Inc.*,
    No. 1:19-CV-750, 2020 WL 3550009 (E.D. Va. Mar. 31, 2020)....................25, 26

*Rehab. Ass'n of Va., Inc. v. Kozlowski*,
    42 F.3d 1444 (4th Cir. 1994) .................................................................................4, 12

*Robinett v. Shelby Cnty. Healthcare Corp.*,
    895 F.3d 582 (8th Cir. 2018) .............................................................................5, 7, 8

*Rodolakis v. Safety Ins. Co.*,
    327 F. Supp. 3d 274 (D. Mass. 2018) .....................................................................28

*Rojas v. Delta Airlines, Inc.*,
    425 F. Supp. 3d 524 (D. Md. 2019) .........................................................................14

*Rosetta Stone Ltd. v. Google, Inc.*,
    676 F.3d 144 (4th Cir. 2012) ....................................................................................21

*Schmidt v. Household Fin. Corp., II*,
    661 S.E.2d 834 (Va. 2008)........................................................................................21

*Slay's Restoration, LLC v. Wright Nat'l Flood Ins. Co.*,
    884 F.3d 489 (4th Cir. 2018) ..............................................................................18, 19

*Smithfield Foods, Inc. v. United Food & Com. Workers Int'l Union*,
 633 F. Supp. 2d 214 (E.D. Va. 2008) ...................................................................13

*Spaulding v. Wells Fargo Bank, N.A.*,
 714 F.3d 769 (4th Cir. 2013) ..................................................................................4

*Spectrum Health Continuing Care Grp. v. Anna Marie Bowling Irrecoverable Tr.*
 *Dated June 27, 2002*,
 410 F.3d 304 (6th Cir. 2005) ..................................................................................5

*United States v. Wynn*,
 684 F.3d 473 (4th Cir. 2012) ................................................................................20

*Vitullo v. Mancini*,
 684 F. Supp. 2d 747 (E.D. Va. 2010) ...................................................................22

*Wesley Health Care Ctr., Inc. v. DeBuono*,
 244 F.3d 280 (2d Cir. 2001)....................................................................................9

*White v. Nat'l Steel Corp.*,
 938 F.2d 474 (4th Cir. 1991) ................................................................................16

**Statutes**

15 U.S.C. § 1692a .................................................................................................24, 28

15 U.S.C. § 1692e .................................................................................................22, 23

15 U.S.C. § 1692k(d) ................................................................................................22

18 U.S.C. § 1961(5) ..................................................................................................16

42 U.S.C. § 1396a(a)(25) ....................................................................................5, 7, 8

42 U.S.C. § 1396u-2(b)(2)(D) ...............................................................................6, 7

Va. Code Ann. § 8.01-413.01(B) ...............................................................................10

Va. Code Ann. § 32.1-325.2(B) .............................................................................5, 8

Va. Code Ann. § 46.2-472 ..........................................................................................5

**Rules**

Fed. R. Civ. P. 9(b) ................................................................................................3, 4

**Other Authorities**

42 C.F.R. § 433.139(b)(1)...........................................................................................9

12 Va. Admin. Code § 30-20-200................................................................................5, 8

12 Va. Admin. Code § 30-80-30...................................................................................9

12 Va. Admin. Code § 30-120-395...............................................................................9

S. Rep. 99-146 (1985)...................................................................................................7

Defendant Medlytix, LLC files this Memorandum in Support of its Motion to Dismiss the First Amended Complaint under Federal Rule of Civil Procedure 12(b)(6).  For the reasons below, Medlytix moves to dismiss with prejudice for failure to state a claim.

## **INTRODUCTION**

Medlytix is a medical billing servicer for Emergency Coverage Corporation ("ECC"). Medlytix is not a debt collector – it submits claims to auto insurers for recovery by healthcare providers (here, emergency room physicians) who provide healthcare services to patients injured in auto accidents.  ECC submitted to Medlytix a claim against an auto insurer to recover medical expenses for Plaintiff's auto accident-related emergency room treatment as covered by the at-fault driver's auto insurer, State Farm.  Medlytix, in turn, submitted a billing package to State Farm for the costs of Plaintiff's care.  Plaintiff's personal injury attorney then paid ECC the amount Medlytix had billed to State Farm from Plaintiff's settlement with the at-fault driver. Plaintiff now complains about the payment her counsel made to ECC.

The First Amended Complaint attempts to transform Plaintiff's billing dispute into a Racketeer Influenced and Corrupt Organizations Act ("RICO") claim by relying on two faulty premises that warrant dismissal of the entire case.  First, Plaintiff's belief that Medlytix either should not have billed State Farm or should have billed a different amount finds no support in the law.  To the contrary, the relevant statutes and courts interpreting them authorize billing third-party liability insurers at non-Medicaid rates before turning to Medicaid – if at all.  Second, Plaintiff alleges no facts to support her contention that the amount billed to State Farm was unreasonably high or somehow inflated.

Each of Plaintiff's three claims against Medlytix also independently fails to plead the requisite elements.  First, her RICO claim cannot stand because, in addition to failing to allege a

1

misrepresentation, she does not plead a pattern of racketeering, much less with the specificity that Rule 9(b) requires.  Nor does she sufficiently plead that any RICO violation caused her injury.  Second, her unjust enrichment claim fails because she does not show any inequity. Finally, Plaintiff's FDCPA claim is time-barred, but even if it were not, it fails because Plaintiff does not sufficiently allege the collection of a consumer debt by a debt collector that acquired the 'debt' post-default.

For these reasons, all claims against Medlytix in Plaintiff's First Amended Complaint should be dismissed with prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges that she is a Medicaid recipient who receives benefits through a managed care organization ("MCO"), Virginia Premier.  Am. Compl. ¶ 1, 37.  Plaintiff alleges that she was in an automobile accident on December 18, 2021, in which the other driver was at fault.  *Id.* ¶¶ 32–34.  Following the accident, Dr. Nevan Chang, an emergency physician who contracted with ECC, treated Plaintiff.  *Id.* ¶ 36.  ECC billed Plaintiff $1,177 for Dr. Chang's services, an amount that she alleges was "inflated."  *Id.* ¶¶ 43–44, *see also id.* ¶¶ 4, 48.  Plaintiff says that when ECC referred her account to Medlytix, it was unpaid for thirty days.  *Id.* ¶ 45.

Plaintiff filed a personal injury claim against the at-fault driver in the accident, whose auto insurer was State Farm.  *Id.* ¶ 34.  Plaintiff alleges that ECC first issued her a bill on January 26, 2022, for $1,177.  *Id.* ¶ 83.  She then says that on January 27, 2022, Medlytix issued a bill to State Farm Bill for the same amount.  *Id.* ¶ 51.  Plaintiff also claims that "[i]n August 2022, Defendant Medlytix falsely represented to [her] legal counsel that [Plaintiff] remained responsible for an outstanding, inflated charge of $1,177.00."  *Id.* ¶ 83.  On October 25, 2022, she settled her personal injury claim.  *Id.* ¶ 46.

On December 8, 2022, Plaintiff's personal injury counsel sent a letter to ECC, which copied Medlytix, "disputing Plaintiff's responsibility for the balance."  *Id.* ¶ 52.  Yet Plaintiff's counsel paid the full balance to ECC on December 14, 2022, from the proceeds of her personal injury settlement.  *Id.* ¶ 53.  Plaintiff claims that ECC shared this amount with Medlytix.  *Id.*

On December 13, 2023, Plaintiff filed this putative class action.  ECF No. 1.  ECC and Medlytix moved to dismiss all counts for failure to state a claim.  ECF No. 23, 25.  In response, Plaintiff amended her complaint.  ECF No. 34.  Plaintiff's First Amended Complaint brings six causes of action, three of which are against Medlytix: violation of RICO under 18 U.S.C. § 1962(a) (both defendants); breach of contract (ECC); unjust enrichment (both defendants); breach of implied contract (ECC); violation of the Virginia Consumer Protection Act (ECC); and violation of the Fair Debt Collection Practices Act ("FDCPA") (Medlytix).

## STANDARD OF REVIEW

On a motion to dismiss for failure to state a claim, the Court "tests the sufficiency of a complaint."  *Edley-Worford v. Virginia Conf. of United Methodist Church*, 430 F. Supp. 3d 132, 139 (E.D. Va. 2019).  "To survive a motion to dismiss, a claim must contain factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  In making that assessment, the Court does not have to accept a plaintiff's "legal conclusions drawn from the facts," nor need it "accept as true unwarranted inferences, unreasonable conclusions, or arguments."  *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006) (citation omitted).

For claims sounding in fraud, plaintiffs must meet the heightened demands of Rule 9(b), meaning they "must state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b); *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781 (4th Cir. 2013).  Plaintiffs

"must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 455–56 (4th Cir. 2013).

## ARGUMENT

### I.    All of Plaintiff's claims fail because Medlytix's bill to State Farm was neither unlawful nor unreasonably high.

The Amended Complaint stems from Plaintiff's unfounded belief that she was unlawfully charged for emergency care she received after a car accident.   But the premises underlying Plaintiff's claims fail to support them.   First, Plaintiff's claims result from an unsupported misreading of Medicaid statutes.   Second, Plaintiff pleads no facts to show that Medlytix's bill to State Farm was "inflated."

### A.    The Medicaid statutes that Plaintiff cites do not apply here, and in any event, Plaintiff misreads the law.

The Amended Complaint fails because Plaintiff misreads Medicaid's provisions, which do not apply to the facts she has alleged.   Plaintiff claims that Medlytix instructed ECC to unlawfully (1) refuse to bill state Medicaid for emergency treatment, and (2) refuse to reduce ECC's bill to the amount that could be reimbursed by Medicaid.   Am. Compl. ¶ 27.   Even if such an instruction were given, there is nothing unlawful about it.

First, Plaintiff's claim that the federal Medicaid statutes require a provider to pursue Medicaid payment rather than third-party liability insurers is incorrect.   Both federal and state law provide that Medicaid is a payer of last resort.   *See Rehab. Ass'n of Va., Inc. v. Kozlowski*, 42 F.3d 1444, 1447 (4th Cir. 1994) ("[O]ne of the requirements of a state Medicaid plan is that it attempt to identify and collect other insurance or source of health care funding available to a Medicaid participant[.]"); Va. Code Ann. § 32.1-325.2(B) ("The Department of Medical

4

Assistance Services shall be the payor of last resort to any insurer.").  Federal law requires that state Medicaid programs "take all reasonable measures to ascertain the legal liability of third parties."  42 U.S.C. § 1396a(a)(25).  Likewise, Virginia law directs providers to "[e]xhaust[] all third party resource[s]," because Medicaid will not pay "unless the invoice indicates that the third party has either paid or denied the claim."  12 Va. Admin. Code § 30-20-200(1)(b).  In cases of auto accidents, like this one, the third party from whom providers first seek payment is the at-fault driver's auto insurer.  *See* Va. Code Ann. § 46.2-472 (motor vehicle policies required to insure against liability for bodily injury to others).

Accordingly, federal appellate courts have repeatedly rejected the notion that providers *must* seek Medicaid reimbursement rather than collect from a third party.  *Robinett v. Shelby Cnty. Healthcare Corp.*, 895 F.3d 582, 587 (8th Cir. 2018) (federal law does not bar provider from attempting recovery from a liable third party where it chooses not to bill Medicaid); *Miller v. Gorski Wladyslaw Est.*, 547 F.3d 273, 281 (5th Cir. 2008) ("hospital was within its rights under Louisiana and federal law to pursue the third-party tortfeasor before it sought Medicaid reimbursement"); *Spectrum Health Continuing Care Grp. v. Anna Marie Bowling Irrecoverable Tr. Dated June 27, 2002*, 410 F.3d 304, 315 (6th Cir. 2005) (provider "was not required to seek payment from Medicaid," and instead could have recovered its "customary fee" from its lien against settlement proceeds from patient's tort claim); *Evanston Hosp. v. Hauck*, 1 F.3d 540, 542–43 (7th Cir. 1993) (hospital could have elected to seek medical expenses from patient's personal injury settlement instead of reimbursement from Medicaid).

Second, providers who choose to collect from non-Medicaid third-party liability insurers are not limited to Medicaid rates.  By opting to pursue third-party coverage instead of Medicaid, the provider can charge its customary fee because Medicaid is not paying.  *Mallo v. Pub. Health*

*Tr. of Dade Cnty., Fla.*, 88 F. Supp. 2d 1376, 1387 (S.D. Fla. 2000) ("[S]hould the health care provider elect not to apply for Medicaid assistance, then the provider can charge the market value of the treatment."); *see also Evanston*, 1 F.3d at 542–43 (explaining provider can choose to pursue full amount rather than seek reimbursement from Medicaid).  Although providers that choose to pursue Medicaid accept certain limitations (like those Plaintiff alleges here), they purchase a "guarantee of partial payment in lieu of possibly full payment or possibly no payment at all."  *Id.* at 542.  Plaintiff acknowledges this reality, pleading that two of her other providers chose "certainty," *id.*, by billing her Medicaid MCO at reduced amounts under the MCO's payment schedule.  Am. Compl. ¶¶ 39–40.  That other providers chose to forgo third-party recovery does not make Medlytix's actions unlawful.

Plaintiff tries to undermine this established law through untenable readings of Medicaid statutes that do not apply.  First, she relies on 42 U.S.C. § 1396u-2(b)(2)(D) to claim that a provider of emergency services who does not have a contract with a Medicaid MCO must accept no more than the amount it could charge Medicaid directly.  Am. Compl. ¶ 27.  In other words, Plaintiff urges that providers can only bill Medicaid prices for emergency services rendered to Medicaid beneficiaries – even if the provider bills someone other than Medicaid.  That reading finds no support in the plain language of the statute.  The cited provision reads,

> Any provider of **emergency services** that does not have in effect a contract with a Medicaid **managed care entity** that establishes payment amounts for services furnished to a beneficiary enrolled in the entity's Medicaid managed care plan must accept as payment in full no more than the amounts (less any payments for indirect costs of medical education and direct costs of graduate medical education) that it could collect if the beneficiary received **medical assistance** *under this subchapter other than through enrollment in such an entity.*

42 U.S.C. § 1396u-2(b)(2)(D).  By its plain terms, this provision requires emergency providers treating Medicaid *managed care entity* beneficiaries to follow the same rules providers would

have to follow if they were treating Medicaid *fee-for-service beneficiaries*, even if those providers don't have a negotiated agreement with the relevant MCO.  As the Fourth Circuit has explained, emergency services are treated differently under this provision because "MCOs [are] unable to pre-negotiate costs with providers of emergency services."  *Healthkeepers, Inc. v. Richmond Ambulance Auth.*, 642 F.3d 466, 469 (4th Cir. 2011) (resolving dispute related to emergency ambulance costs *billed to Medicaid* programs).  In other words, the statute is concerned with providing cost certainty for emergency costs billed *to MCOs*.  That has nothing to do with the amount that can be billed to third parties when Medicaid is not paying.

Not only is Plaintiff's reading of 42 U.S.C. § 1396u-2(b)(2)(D) unsupported by the text, but it also contradicts Congressional intent "to protect Medicaid's coffers to the fullest extent possible."  *Robinett*, 895 F.3d at 587.  In Plaintiff's view, a provider would receive the same amount whether it billed Medicaid or a liable third party.  In that case, it would make little sense for the provider to pursue a third party rather than the "certain but likely reduced payment from Medicaid," because the recovery would be the same either way.  *Id.*  That result would undermine Congress' goal to "[e]nhance [t]hird-[p]arty [l]iability [c]ollections" by requiring states to issue regulations to identify third party payers before turning to Medicaid.  S. Rep. 99-146, 312 (1985); *Arkansas Dep't of Health & Hum. Servs. v. Ahlborn*, 547 U.S. 268, 291 (2006) (Congress intended to Medicaid to be a payer of last resort).

Second, Plaintiff claims that 42 U.S.C. § 1396a(a)(25)(C) precluded Medlytix from billing State Farm for Plaintiff's emergency room charge.  This provision requires state Medicaid plans to provide:

> (C) that in the case of an individual who is entitled to medical assistance under the State plan with respect to a service for which a third party is liable for payment, the person furnishing the service may not seek to collect from the individual (or

any financially responsible relative or representative of that individual) payment of an amount for that service

    (i) if the total of the amount of the liabilities of third parties for that service is at least equal to the amount payable for that service under the plan (disregarding section 1396*o* of this title), or

    (ii) in an amount which exceeds the lesser of

        (I) the amount which may be collected under section 1396*o* of this title, or

        (II) the amount by which the amount payable for that service under the plan (disregarding section 1396*o* of this title) exceeds the total of the amount of the liabilities of third parties for that service[.]

42 U.S.C. § 1396a(a)(25)(C). Plaintiff urges that this statute prohibited ECC "from seeking payment [for] more than the amount equal to the payment rate payable to the state medical assistance plan provided by the Virginia Department of Medical Assistance." Am. Compl. ¶ 48. But that is not what the statute says. Instead, it "provides that a state Medicaid plan must prohibit health care providers from collecting payment from a patient entitled to Medicaid if a third-party is liable for the patient's medical expenses." *Miller*, 547 F.3d at 282–83 (interpreting 42 U.S.C. § 1396a(a)(25)(C)). This provision does not bar Medlytix from doing exactly what it did here: "attempt collection *directly from . . . a liable third party*." *Robinett*, 895 F.3d at 587. Thus, Section 1396a(25)(C) is not implicated here, and Medlytix did not violate it by submitting a bill to State Farm.

      Plaintiff's reading of Virginia's statutes and regulations is just as incorrect. *See* Am. Compl. ¶ 48(C), (D). The issue here is whether Virginia's Medicaid program *must* be charged for care when a provider is aware of "the probable existence of third party liability." 12 Va. Admin. Code § 30-20-200. The answer is no. To the contrary, the Department of Medical Assistance Services ("DMAS," which manages Virginia's Medicaid program) "shall be the payor of last resort to any insurer." Va. Code Ann. § 32.1-325.2(B). In fact, if Medicaid is

8

aware of potential third-party liability when a claim is submitted, the state Medicaid agency is entitled to wait for a determination on third party liability before paying a claim:

> If the agency has established the probable existence of third party liability at the time the claim is filed, *the agency must reject the claim and return it to the provider for a determination of the amount of liability*.

42 C.F.R. § 433.139(b)(1) (emphasis added).  Plaintiff's references to 12 Va. Admin. Code §§ 30-120-395 and 30-80-30[1] are irrelevant – those sections indicate how Virginia Medicaid pays for services that have been billed to Medicaid.  Those sections have no bearing on how much a provider may charge for its services when, as here, a third-party liability insurer is paying.

Thus, none of these statutes say what Plaintiff claims: that Defendants had to seek payment from Plaintiff's MCO plan rather than a third-party auto insurer, or that the third-party insurer could be billed only at the Medicaid discounted rate.  *See, e.g.*, *Miller*, 547 F.3d at 281, 285 (rejecting argument that hospital had to bill Medicaid rather than recover from patient's tort settlement and finding hospital could seek its "entire customary fee" if it elected to pursue the tort settlement).  To the contrary, Medicaid is a payer of last result, which has negotiated steeply discounted rates for when Medicaid itself is paying but encourages providers to bill third parties first and instead if possible.  *See, e.g.*, *Wesley Health Care Ctr., Inc. v. DeBuono*, 244 F.3d 280, 281–82 (2d Cir. 2001) (explaining federal regulations dictating two avenues for payment where third-party liability exists: "cost avoiding," which "shift[s] to the provider the burden of securing payment from third parties," and "pay and chase," where the state pays then "seeks reimbursement from the liable third party").

---

[1] Section 30-80-30 does not even apply to Medicaid MCOs like the one from which Plaintiff allegedly benefits.  Am. Compl. ¶ 37.  Instead, it governs payment for Virginia's fee-for-service Medicaid program.  *See* 12 Va. Admin. Code § 30-80-30 (titled "Fee-for-service providers").

Plaintiff's belief that she can sue Defendants because her emergency room care was billed at a higher rate to a third party than it would be to Medicaid fundamentally misconstrues the Medicaid statutes. Nothing unlawful occurred here – the system operated just as it was supposed to. Because the Amended Complaint hinges on Plaintiff's misconstruction of Medicaid law, each of her claims fails.

      **B.**      **Plaintiff does not plausibly plead her alternative theory that the cost of her emergency care was inflated.**

Plaintiff also contends that even if Medlytix's claim to State Farm complied with the law, it was still unreasonably high or "inflated." Other than her unfounded assertion that ECC's emergency room charge was higher than allowed charges under Medicaid, Plaintiff cites nothing to support this conclusion.

Plaintiff's allegations are not enough to show that the amount Medlytix billed to State Farm was somehow inflated. By analogy, under Virginia law, in actions for personal injuries or medical expense benefits payable under motor vehicle insurance policies, there is a rebuttable presumption that a properly authenticated charge from a healthcare provider is reasonable. Va. Code Ann. § 8.01-413.01(B). In determining liability for medical costs, Virginia courts examine whether the bill at issue is "reasonable, *i.e.*, not excessive in amount, considering the prevailing cost of such services" and "reasonably necessary," meaning "not the product of overtreatment or unnecessary treatment." *McMunn v. Tatum*, 379 S.E.2d 908, 913 (Va. 1989) (superseded by statute on other grounds).

Plaintiff has pled no facts to show that the amount billed to State Farm was either unreasonably high or that her emergency care was not reasonably necessary. For instance, Plaintiff does not allege (1) what services she received; (2) the market rate for similar services; (3) on which geographic market and on what date(s) she bases her comparison; (4) the usual or

customary rate ECC or Dr. Chang charges for such services; (5) whether she accounts for the emergency nature of the care; (6) whether any factors may have increased the provider's cost; or (7) the amount she believes she should have been charged if not the Medicaid rate. *See Colomar v. Mercy Hosp., Inc*., 461 F. Supp. 2d 1265, 1269, 1272 (S.D. Fla. 2006) (describing factors used to analyze reasonableness of hospital service costs); *Galloway v. Methodist Hosps., Inc*., 658 N.E.2d 611, 614 (Ind. Ct. App. 1995) (reasonableness could be established by comparison to other facilities in area, based on hospital's budget or costs of the care, and amount of invoice). Indeed, although Plaintiff claims her attorney "disput[ed] Plaintiff's responsibility" for the charge (Am. Compl. ¶ 52), she does not claim that her attorney disputed the reasonableness of the rate. Her attorney then paid the rate charged in full from her personal injury settlement. *Id.* ¶ 53.

Plaintiff's claim of unreasonable pricing instead relies on allegations that have nothing to do with Plaintiff's own experience. She compares the cost billed to State Farm to the discounted prices negotiated by commercial insurers and the steeply discounted prices for Medicaid or Medicare. Am. Compl. ¶ 6. But these comparators are irrelevant because "evidence of [a managed care payor's] contractual discounts, standing alone, is insufficient to prove that [the hospital's] charges were unreasonable." *Hillsborough Cnty. Hosp. Auth. v. Fernandez*, 664 So.2d 1071, 1072 (Fla. Dist. Ct. App. 1995). Indeed, Medicaid or Medicare rates are not comparators for "reasonable" rates when Medicaid and Medicare are not paying.

For instance, in a worker's compensation suit, the employer argued a medical bill was "excessive" because most of the provider's patients were covered by Medicare. *Ceres Marine Terminals v. Armstrong*, 722 S.E.2d 301, 308 (Va. App. 2012). Thus, in the employer's view, "the amount set by Medicare" was the "'reasonable' rate for the medical provider to receive."

11

*Id.*  The court rejected that view, finding that Medicare rates were not evidence of whether the charge exceeded "the rate that prevails in the same community for similar treatment."  *Id.*; *see also Rehab. Ass'n of Va.*, 42 F.3d at 1447 (observing that state Medicaid fees are "almost always less than the reasonable charge for services" even for federal Medicare reimbursement). Similarly, amounts accepted by providers "pursuant to contractual negotiations" with a commercial insurer "do not reflect the prevailing cost of [] services to other patients," and thus are not evidence of the reasonableness of medical bills.  *Radvany v. Davis*, 551 S.E.2d 347, 348 (Va. 2001).

Likewise, Plaintiff cites data that ECC's parent company collects far less than it bills to uninsured patients, but she fails to show that the data supports price inflation rather than, for example, failed collection efforts from the uninsured.  Am. Compl. ¶ 4.  Nor does she explain how the data relates to her contention that the emergency treatment costs billed to State Farm for her own care bore "no relation to the reasonable value of the services."  *Id.* ¶ 10.  Without factual support for Plaintiff's contention that the charge was unreasonable, this theory cannot support any of the causes of actions pled in the Amended Complaint.

Rejecting the premises underlying Plaintiff's claims leads to dismissal of the entire Amended Complaint.  But as explained below, dismissal is also proper because Plaintiff fails to plead the requisite elements of each count against Medlytix.

## II.   Plaintiff fails to make out a plausible RICO violation.

Plaintiff first asserts a violation of RICO, 18 U.S.C. § 1962(a), premised on mail and wire fraud.  Plaintiff alleges a "Fraudulent Billing Enterprise" that demands payments for amounts that she says ECC and Medlytix know they cannot recover from Medicaid beneficiaries who receive emergency care after accidents.  Am. Compl. ¶¶ 62, 69, 75, 82, 84.

"To state an offense under 18 U.S.C. § 1962(a), the Complaint must allege that: (1) the Defendants derived income from a pattern of racketeering activity; (2) the income was used or invested, directly or indirectly, in the establishment or operation; (3) of an enterprise; (4) which is engaged in or the activities of which affect interstate or foreign commerce." *Smithfield Foods, Inc. v. United Food & Com. Workers Int'l Union*, 633 F. Supp. 2d 214, 222 (E.D. Va. 2008).  A RICO claim relying on mail or wire fraud is subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b).  *See Neild v. Wolpoff & Abramson, L.L.P.*, 453 F. Supp. 2d 918, 926 (E.D. Va. 2006).  This standard requires pleading fraud "with particularity as to the time, place and contents of the false representations, as well as the identity of the person making those representations and the object sought by the fraud."  *Baldino's Lock & Key Serv., Inc. v. Google, Inc.*, 88 F. Supp. 3d 543, 549 (E.D. Va. 2015), *aff'd*, 624 F. App'x 81 (4th Cir. 2015).

The bar in the Fourth Circuit for a RICO violation, particularly one based on mail or wire fraud, is high.  *Baker v. Sturdy Built Mfg., Inc.*, No. 3:07-CV-212, 2007 WL 3124881, at *3 (E.D. Va. Oct. 23, 2007) (describing Fourth Circuit's "demanding" standard).  "This caution is designed to preserve a distinction between ordinary or garden-variety fraud claims better prosecuted under state law and cases involving a more serious scope of activity."  *Al-Abood ex rel. Al-Abood v. El-Shamari*, 217 F.3d 225, 238 (4th Cir. 2000).

Plaintiff does not meet the heightened standard.  Besides failing to plausibly allege a misrepresentation at all, she does not allege a pattern of events or that Defendants caused her injury.  Nor does she sufficiently plead an intent to defraud or that any purported racketeering income was used or invested in the "enterprise."  Her RICO claim should be dismissed.

**A.** **Plaintiff has failed to plausibly allege racketeering activity as her allegations show no misrepresentation or fraud.**

"To plead mail or wire fraud, a plaintiff must show: (1) a scheme disclosing intent to defraud; and (2) the use, respectively, of the mails or interstate wires in furtherance of the scheme." *Baldino's Lock & Key Serv.*, 88 F. Supp. 3d at 549.

Plaintiff alleges two purported misrepresentations by Medlytix, neither of which is actionable. First, she cites the billing package that Medlytix submitted to State Farm. Am. Compl. ¶ 83. Second, she claims Medlytix "falsely represented" to her legal counsel that she was "responsible" for the amount billed to State Farm. *Id.* She also alleges that ECC billed her for the same amount. The crux of these claims is that Defendants billed her for an amount that she says is unlawful.

Plaintiff's contention that the charge was illegal cannot support her claim, as a "misrepresentation of law [] cannot be the basis for a predicate act of fraud." *See Rojas v. Delta Airlines, Inc.*, 425 F. Supp. 3d 524, 541 (D. Md. 2019); *see also Blount Fin. Servs., Inc. v. Walter E. Heller & Co.*, 819 F.2d 151, 152 (6th Cir. 1987) ("The fact that the parties take different positions under the contract as to the appropriate prime rate . . . does not give rise to a valid claim for fraud."); *Coulibaly v. J.P. Morgan Chase Bank, N.A.*, No. 8:10-CV-3517, 2011 WL 3476994, at *19 (D. Md. Aug. 8, 2011) ("mere disagreement over facts and law" does not show fraud under Rule 9(b)). Nor can Plaintiff base a fraud claim on a representation of an amount due. *See Rojas*, 425 F. Supp. 3d at 541 (a line-item charge was not an affirmative misrepresentation of material fact, but merely a "true" representation that the defendants assessed that charge).

But even if Plaintiff could base a RICO claim on the type of misrepresentation she asserts, her claim would fail. As explained above, the law allowed Defendants to seek recovery

14

from the insurer of the at-fault driver.   *See* Part I(A).  Accordingly, there can be no misrepresentation when the bill to State Farm "was, in fact, legal."   *In re MasterCard Int'l Inc.*, 313 F.3d 257, 263 (5th Cir. 2002) (RICO claim failed to establish predicate mail or wire fraud in part because "Defendants could not have fraudulently represented the Plaintiffs' related debt as legal because it was, in fact, legal.").  And Plaintiff does not sufficiently allege that the amount charged to State Farm was unreasonable or inflated.  *See* Part I(B).

Nor does she describe with particularity any misrepresentation.   For one, she acknowledges that Medlytix billed the costs of medical expenses *to State Farm*, which cannot be a misrepresentation to Plaintiff.  *See* Exhibit A at 1 ("bill to" State Farm); *id.* at 3 ("Medlytix has billed the following carrier").[2]   She also generally states that Medlytix "represented" to her counsel that she "remained responsible" for the charge Medlytix billed to State Farm.  Notably missing from her allegation is how that "represent[ation]" was made.  For instance, who initiated contact and how?  Does Plaintiff claim that Medlytix contacted her personal injury counsel?  If so, how did Medlytix know the identity of her counsel or their contact information?  What did Medlytix say that purportedly makes Plaintiff believe Medlytix represented she "*remained responsible*" for an amount that Medlytix never billed to her in the first place?  Based on Plaintiff's own allegations of Medlytix's role to bill third-party insurers, it is at least equally plausible that Medlytix merely conveyed to Plaintiff's personal injury counsel – who was resolving a claim against the at-fault driver – the amount that Medlytix billed to the at-fault driver's insurer.  This type of broad, generic pleading does not meet Rule 9(b)'s requirements.

---

[2] When a purported RICO violation is based on a representation in a document relied on in but not attached to the Complaint, the Court may consider that document on a motion to dismiss. *See Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004).

*See, e.g.*, *White v. Nat'l Steel Corp.*, 938 F.2d 474, 490 (4th Cir. 1991) (fraud claim failed due to "generality and vagueness of the alleged representations").

Because Plaintiff fails to identify with particularity a misrepresentation that could support her claim, she fails to plead a predicate act under RICO.  Her RICO claim should be dismissed for this reason alone.

### B.    Plaintiff has not pled a pattern of racketeering activity.

Even if Plaintiff had sufficiently pled at least one predicate act, a single purportedly unlawful claim for payment cannot support a RICO claim because it does not allege a pattern of racketeering activity.  Indeed, RICO requires "at least two acts of racketeering activity."  *See* 18 U.S.C. § 1961(5); *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 238–40 (1989) (finding two acts is the "minimum number of predicates necessary to establish a pattern," but also requiring a showing of "relatedness" between the acts and "threat of continuing racketeering activity").  And "courts are cautious about basing a RICO claim on predicate acts of mail and wire fraud because it will be the unusual fraud that does not enlist the mails and wires in its service at least twice." *Al-Abood*, 217 F.3d at 238.  Plaintiff thus must "adequately plead at least two predicate acts that form a pattern of racketeering." *See Am. Chiropractic Ass'n*, 367 F.3d at 233.  And because she alleges fraud, she must plead other predicate acts with particularity.  *See Neild*, 453 F. Supp. 2d at 926.

Plaintiff fails to meet this requirement.  She merely alleges that the *same* charge for $1,177 was communicated in a bill from ECC to Plaintiff, in a billing package by Medlytix to State Farm, and in a later "represent[ation]" to her counsel.  *See* Am. Compl. ¶ 83.  One purportedly unlawful demand for payment, submitted as a billing package to a third party, and then later discussed with her attorney, is not enough to make out a RICO pattern.  Indeed, these

16

communications do not "amount to or pose a threat of continued criminal activity" as RICO requires. *GE Inv. Priv. Placement Partners II v. Parker*, 247 F.3d 543, 549 (4th Cir. 2001). The Fourth Circuit has explained that "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement," and that "schemes involving fraud related to the sale of a single enterprise do not constitute, or sufficiently threaten, the 'long-term criminal conduct' that RICO was intended to address." *Id.* Simply put, Plaintiff's complaint about a single medical bill does not make out a RICO scheme.

Perhaps recognizing this flaw, Plaintiff speculates about the existence of a larger fraudulent billing scheme – but she fails to allege any predicate acts to support it. Plaintiff pleads only general and conclusory allegations of any other fraudulent activity. For instance, she claims that Defendants administered and billed medical services to "thousands of Medicaid beneficiaries." Am. Compl. ¶ 78. From this statement, she asks the Court to conclude – with no factual support – that Defendants "fraudulently billed thousands of Medicaid beneficiaries" and "regularly and continuously receive illegally collected payments." *Id.* ¶¶ 78, 80, 87. She cites no examples of those illegal payments, much less the time, place, contents, identity, or object specifics that Rule 9(b) requires. But Plaintiff must detail "the alleged misrepresentations and mail or wire fraud perpetrated by [Defendants] that purportedly caused injury to [her] and other victims." *Aggarwal v. Sikka*, No. 1:12-CV-60, 2012 WL 12870349, at *5 (E.D. Va. June 12, 2012) (RICO claim failed to establish a pattern because "plaintiffs allege[d] only in conclusory fashion that [defendant] has engaged in at least the four transactions as alleged").

Plaintiff's conclusory allegations do not show a pattern of racketeering activity, especially not under the heightened requirements for fraud. *See Food Lion, Inc. v. Cap. Cities/ABC, Inc.*, 887 F. Supp. 811, 819 (M.D.N.C. 1995) (refusing to consider allegations of

"other acts of mail and wire fraud" where those other acts were not alleged with sufficient particularity). She simply has not pled "ongoing unlawful activities whose scope and persistence pose a special threat to social well-being" sufficient to state a RICO claim. *GE Inv. Priv. Placement Partners II*, 247 F.3d at 549. With no facts other than her own billing dispute, Plaintiff's claim does not meet this Circuit's demanding RICO standard.

### C.   Plaintiff fails to allege that any RICO violation caused her injury.

A plaintiff also must allege that she was "injured in [her] business or property *by reason of* a violation" of RICO. *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 647 (2008) (emphasis added). "RICO proximate causation is lacking when (1) there is a more direct victim from whom (or intervening factor from which) the plaintiff's injuries derive, or (2) the alleged RICO predicate violation is too distinct or logically unrelated from the cause of the plaintiff's injury." *Albert v. Glob. Tel\*Link*, 68 F.4th 906, 911 (4th Cir. 2023). The Fourth Circuit has cautioned against permitting RICO claims premised on extended chains of causation since "RICO causation requires a proximity of statutory violation and injury such that the injury is sequentially the direct result—generally at the 'first step' in the chain of causation. *Slay's Restoration, LLC v. Wright Nat'l Flood Ins. Co.*, 884 F.3d 489, 494 (4th Cir. 2018).

Plaintiff fails to plead that any alleged misrepresentation of the amount owed to ECC directly caused her purported injury. In fact, she alleges that her counsel "disput[ed] Plaintiff's responsibility for the balance claimed." Am. Compl. ¶ 52. Plaintiff's counsel then paid the disputed charge. *Id.* ¶ 53. In other words, Plaintiff alleges that she *knew* the bill was somehow fraudulent yet directed her counsel to pay it in full. This "break[s] the chain of causation" between any misrepresentation by Medlytix and Plaintiff's purported injury. *Bridge*, 553 U.S. at 658–59. Because Plaintiff's counsel disputed yet paid the full amount Medlytix billed to State

Farm from the settlement of Plaintiff's personal injury claim against the at-fault driver, any injury was not "the *direct* result" of Medlytix's conduct. *Slay's Restoration*, 884 F.3d at 494 ("Because Slay's Restoration's claimed injury was not the *direct* result of the defendant's fraudulent conduct, it was not *proximately* caused by that conduct[.]").  In other words, the chain of causation in Plaintiff's claim is too attenuated, involving the actions and decisions of State Farm, the at-fault driver, Plaintiff, and Plaintiff's counsel.  Because her "causal theory" involves intervening steps and parties, it "cannot meet RICO's direct relationship requirement." *Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 10 & 13 n.1 (2010) (finding causal theory involving third and fourth parties "too attenuated" for RICO proximate cause); *MSP Recovery Claims, Series LLC v. Lundbeck LLC*, 664 F. Supp. 3d 635, 658–59 (E.D. Va. 2023) (dismissing RICO claim for lack of proximate cause).

Plaintiff's allegations thus show that no alleged RICO violation caused her injury, so her RICO claim fails for this reason as well.

### D.    Plaintiff's RICO claim fails for additional reasons.

Plaintiff fails to plausibly plead a § 1962(a) RICO claim for two other reasons.  First, she does not allege the "use or investment" of income gained from racketeering activity in a qualifying RICO enterprise. *See Busby v. Crown Supply, Inc.*, 896 F.2d 833, 837 (4th Cir. 1990) ("To allege a violation of § 1962(a), a plaintiff must show (a) receipt of income from a pattern of racketeering activity, and (b) the use or investment of this income in an enterprise.").  A plaintiff must plead "specific details about how proceeds from the alleged racketeering activity were used to establish or operate" the RICO enterprise. *Chambers v. King Buick GMC, LLC*, 43 F. Supp. 3d 575, 607 (D. Md. 2014).  Other than Plaintiff's conclusory allegation that Defendants "use income from racketeering activity to operate an enterprise," and her contention that Defendants

"shared" the proceeds of the $1,177.00 payment – which does not suggest reinvestment at all – Plaintiff has alleged no facts to support use or investment in the purported enterprise.  Am. Compl. ¶¶ 62, 53.  This flaw dooms her RICO claim.

Second, a plaintiff pleading predicate acts of fraud must allege that the defendant committed those acts with the specific intent to defraud.  *United States v. Wynn*, 684 F.3d 473, 478 (4th Cir. 2012).  To meet this bar, a plaintiff must plead "more . . . than simply an intent to lie to the victim or to make a false statement to him."  *Id.*  Rather, "a defendant must specifically intend to lie or cheat or misrepresent with the design of depriving the victim of something of value."  *Id.*  Plaintiff's "sparse factual allegations do not give rise to a plausible inference that [Defendants] had the specific intent to defraud."  *Bourgeois v. Live Nation Ent., Inc*., 3 F. Supp. 3d 423, 461 (D. Md. 2014), *as corrected* (Mar. 20, 2014) (finding implausible plaintiff's theory of intend to defraud through collection of "service charges" on ticket sales).  She simply alleges that Defendants "knowingly ma[de] material misrepresentations and omissions."  Am. Compl. ¶ 75.  This "boilerplate recitation of the elements of the claim" is insufficient to show intent.  *Baldino's Lock & Key Serv.*, 88 F. Supp. 3d at 550 (allegation that defendants "knew exactly what they were doing" failed to plead RICO intent).  Further, the misrepresentations she cites stem from her incorrect view of Medicaid law, and she pleads nothing to show that Defendants did not simply interpret the law differently.  *See id.* (speculative allegation of intent was an "unwarranted deduction of fact" that did not show intent to defraud).

In sum, Plaintiff's attempt to cast her baseless billing dispute as a RICO scheme is as implausible as it is factually unsupported.  Her RICO claim should be dismissed.

### III.     Plaintiff cannot sue for unjust enrichment.

To plead unjust enrichment, a plaintiff must allege (1) she conferred a benefit on Defendants; (2) Defendants knew of the benefit and should reasonably have expected to repay Plaintiff; and (3) Defendants accepted or retained the benefit without paying for its value. *Schmidt v. Household Fin. Corp., II*, 661 S.E.2d 834, 838 (Va. 2008).

As explained in Part I(A), the payment amount at issue did not violate any law, and Plaintiff alleges no other plausible basis for inequity.  She simply concludes that retaining the full amount charged "would violate the fundamental principles of justice, equity, and good conscience."  Am. Compl. ¶ 116.  This conclusory statement has no factual support and is not enough to survive a motion to dismiss.  Except for her mistaken belief about Medicaid rates, Plaintiff cites no facts to show why the emergency medical services provided here – which Plaintiff does not even describe – cannot be billed at this rate.  *See* Part I(B).  Indeed, Plaintiff admits she voluntarily "paid the full amount" even though her counsel disputed the charge.  Am. Compl. ¶¶ 52–53.  She has therefore failed to plead any inequitable retention of a benefit to support her unjust enrichment claim.  Nor has she alleged any facts showing Defendants should reasonably have expected to repay her.  *See Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 166 (4th Cir. 2012) (Virginia unjust enrichment claim failed because plaintiff made only a conclusory allegation that the defendant should have reasonably expected to repay).

For these reasons, Plaintiff's unjust enrichment claim should be dismissed.

### IV.     Any FDCPA claim is time-barred and fails to state a claim.

To plead an FDCPA claim, a plaintiff must allege that "(1) he or she was the object of collection activity arising from a consumer debt as defined by the FDCPA; (2) the defendant is a debt collector as defined by the FDCPA; and, (3) the defendant engaged in an act or omission

prohibited by the FDCPA, such as using a false, deceptive, or misleading representation or means in connection with the collection of any debt." *Hardnett v. M&T Bank*, 204 F. Supp. 3d 851, 859 (E.D. Va. 2016), *aff'd sub nom.*, 699 F. App'x 242 (4th Cir. 2017). A plaintiff must bring an action under the FDCPA "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d).

As explained in Part I, Plaintiff's theory misinterprets the federal Medicaid statutes and Virginia analogues, and her conclusion that the amount Medlytix billed to State Farm was otherwise inflated lacks factual support. Because Plaintiff fails to plausibly allege that Medlytix's claim to State Farm was unlawful, she does not plausibly allege any false, deceptive, or misleading representation by Medlytix.

In any event, Plaintiff's FDCPA claim is time barred. But even if it were timely, Plaintiff does not plausibly allege that Medlytix is a debt collector within the meaning of the FDCPA, which requires the debt to be in default when Medlytix obtains it, or that she was the object of any collection activity relating to a consumer debt.

### A. Plaintiff's FDCPA claim is time-barred because it is based on alleged representations made more than one year before she sued.

Plaintiff claims a violation of 15 U.S.C. § 1692e, which prohibits "false, deceptive, or misleading representation[s]" in connection with debt collection efforts. Am. Compl. ¶ 165. The date of the violation is thus the date the alleged representation was made. *See Vitullo v. Mancini*, 684 F. Supp. 2d 747, 753 (E.D. Va. 2010) ("The alleged FDCPA violation occurred, and the action accrued, when Mancini sent the letter on June 16, 2008."); *Akalwadi v. Risk Mmgt. Alternatives, Inc.*, 336 F. Supp. 2d 492, 501 (D. Md. 2004) ("statute of limitations begins to run when a communication violating the FDCPA is sent"); *see also Bender v. Elmore &*

*Throop, P.C.*, 963 F.3d 403, 406–07 (4th Cir. 2020) (analyzing FDCPA statute of limitations from date of "phone call" from defendant, and date of "letter listing the alleged debts").

Plaintiff alleges two communications by Medlytix about Plaintiff's emergency care: the January 27, 2022 bill to State Farm and the alleged August 2022 "represent[ation]" to Plaintiff's counsel of an "outstanding charge." Am. Compl. ¶ 83. Plaintiff filed this suit on December 13, 2023, well beyond one year from the latter communication in August 2022. Plaintiff alleges no further "false or misleading representation" by Medlytix. Plaintiff's allegations thus confirm that the one-year limitations period for her claim has expired. *See Johnson v. Hill*, 965 F. Supp. 1487, 1489 (E.D. Va. 1997) (dismissal is proper when "expiration of the statute of limitations is clear on the face of the complaint"); *Prescott v. PHH Mortg. Corp.*, No. 3:16-CV-288, 2017 WL 510449, at *3 (E.D. Va. Feb. 7, 2017), *aff'd*, 689 F. App'x 769 (4th Cir. 2017) (FDCPA claim time-barred, because "[e]ven under the most charitable interpretation of the dates asserted" the alleged violations occurred outside the statute of limitations).

To the extent Plaintiff asserts that the statute of limitations began to run from the date Medlytix "collect[ed] amounts not permitted to be collected" (Am. Compl. ¶ 164), she finds no legal support. The Fourth Circuit has long held that violations of the FDCPA occur when "an improper communication, threat, or misrepresentation is made." *Bender*, 963 F.3d at 407. Medlytix has not located a single case in which a court calculated the FDCPA's statute of limitations from the date the *debtor made payment*. To the contrary, courts repeatedly define the relevant date based on the putative *collector's* actions, not the debtor's or some other party's actions. *See Mattson v. U.S. W. Communications, Inc.*, 967 F.2d 259, 261 (8th Cir. 1992) (violation accrued when creditor mailed letter, not when plaintiff received it); *Maloy v. Phillips*, 64 F.3d 607, 608 (11th Cir. 1995) (same); *see also Naas v. Stolman*, 130 F.3d 892, 893 (9th Cir.

1997) (creditor filing suit triggered limitations period, not appellate court review of the judgment).

This makes sense, given that the section of the FDCPA that Plaintiff invokes governs "representations" in connection with debt collection. *See* 15 U.S.C. § 1692e. Accordingly, the date of the violation naturally runs from the date of the defendant's representation. Plaintiff cannot extend her own statute of limitations based on her decision to pay the account nearly a year after Medlytix submitted it to State Farm.

Because Plaintiff's FDCPA claim is time-barred on the face of the pleadings, it should be dismissed for this reason alone.

### B.    Medlytix is not a debt collector under the FDCPA.

Plaintiff's FDCPA claim also fails because Medlytix is not a debt collector within the meaning of the FDCPA. The term "debt collector" "does not include . . . (F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . (iii) concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F)(iii). Medlytix is not a debt collector because the account was not in default when Medlytix obtained it – or ever. Indeed, it is difficult, if not impossible, to conceive of an account that Medlytix received to submit to the at-fault driver's auto insurer being "in default" at the time of receipt. This reality is plain from the face of the Amended Complaint, despite Plaintiff's efforts to avoid it.

The FDCPA does not define "default," but "a default generally does not occur immediately upon a debt becoming due, unless the terms of the parties' relevant agreement dictate otherwise." *Fontell v. Hassett*, 574 F. App'x 278, 279 (4th Cir. 2014). The Fourth Circuit drew this conclusion from other appellate courts' distinction "between a debt that is in

default and a debt that is merely outstanding," which emphasizes "that *only after some period of time does an outstanding debt go into default*." *See Alibrandi v. Fin. Outsourcing Servs., Inc*., 333 F.3d 82, 86 (2d Cir. 2003) (emphasis added). Likewise, this Court has acknowledged that "a payment is not generally in default per se upon its due date." *Raya v. NPAS, Inc*., No. 1:19-CV-750, 2020 WL 3550009, at *5 (E.D. Va. Mar. 31, 2020).

Plaintiff makes only conclusory and implausible allegations that the account was in default when Medlytix obtained it, none of which can withstand a motion to dismiss. Plaintiff contends that ECC referred her account to Medlytix "only after that account had gone unpaid for more than thirty days." Am. Compl. ¶ 45. Plaintiff then concludes, without support, that ECC "considered Plaintiff was in default on paying a consumer debt when it engaged Medlytix." *Id.*

Yet Plaintiff also pleads that Medlytix billed State Farm on January 27, 2022, *one day* after she alleges ECC issued the first and only bill to her on January 26, 2022. Am. Compl. ¶¶ 51, 83. Medlytix's submission to State Farm – as well as the bill Plaintiff claims she received from ECC – were sent roughly a month after Plaintiff's accident and medical treatment on December 18, 2021. *Id.* ¶ 32. Plaintiff therefore asks the Court to assume, with no factual support, that the "debt" went into "default" at some point in the month between Plaintiff's treatment and Medlytix's submission to State Farm, and merely one day after ECC allegedly *first billed* Plaintiff. This is far from plausible. Plaintiff alleges no notice of default in any of these communications, no warning the account would be placed in default, and no contract providing a timeline for default. *See Hamilton v. Avectus Health Care Sols., LLC*, No. 5:13-CV-01967-SGC, 2015 WL 5693610, at *8 (N.D. Ala. Sept. 29, 2015) (no default where there was nothing to suggest that payment was due before the defendant received the account to seek recovery from

25

third-party payers). And the State Farm letter – if the notion of default could even apply to a third-party insurance claim – also contains no suggestion of default. *See* Ex. A.[3]

Nor does Plaintiff allege facts to support her claim that the account was in default because it was unpaid for thirty days, especially given that ECC first communicated the charge the day before Medlytix billed State Farm. A default does not occur upon an amount becoming due. *See Fontell*, 574 F. App'x at 279; *Raya*, 2020 WL 3550009, at *5. Likewise, that an invoice is "outstanding" does not mean it is in default. *Gould v. ClaimAssist*, 876 F. Supp. 2d 1018, 1023 (S.D. Ill. 2012) (rejecting plaintiff's contention that debt was in default because it was "outstanding" where he failed to allege any facts to show default); *Lange v. Pro. Acct. Servs., Inc.*, No. 3:19-CV-0150-HRH, 2020 WL 1302512, at *7 (D. Alaska Mar. 18, 2020) (no default because although "Plaintiff's bill might have been outstanding at the time he was discharged from the Hospital and he might have agreed that he was responsible for ultimately paying this bill, [] there is no evidence that suggests that his debt was in default when he left the Hospital or six days later when defendant obtained it"). Nor can default be inferred simply because ECC referred a claim to Medlytix. *See Mladenov v. R1 RCM Inc.*, No. 21-CV-1509, 2024 WL 230934, at *4 (N.D. Ill. Jan. 22, 2024) ("[T]he fact that R1 RCM sought to resolve Mladenov's balance does not prove that the debt crossed the threshold of default[.]").

For these reasons, Plaintiff fails to allege that Medlytix was a debt collector within the meaning of the FDCPA, so her claim cannot stand.

---

[3] In reviewing a motion to dismiss, the Court may consider "documents incorporated into the complaint by reference," *Lee v. Wade*, No. 3:15-CV-37, 2015 WL 5147067, at *1 (E.D. Va. Aug. 31, 2015), or documents attached to the motion to dismiss which are "integral to the complaint and authentic." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). The Court may properly consider the State Farm claim letter, as it is directly referenced in the complaint (Am. Compl. ¶¶ 29 n.4, 51, 83) and integral to Plaintiff's claim against Medlytix.

C.    **Plaintiff was not the object of collection activity arising from a consumer debt.**

To determine whether a communication falls under the FDCPA, courts consider "the nature of the parties' relationship, as well as the purpose and context of the communication and whether an 'animating purpose' of the communication is to induce payment." *Penn v. Cumberland*, 883 F. Supp. 2d 581, 587–88 (E.D. Va. 2012). Plaintiff was not the object of collection activity, nor did Medlytix's bill to State Farm arise from a consumer debt.

Medlytix sent a billing package to State Farm, the tortfeasor's auto insurer, for Plaintiff's emergency room expenses. In similar cases involving efforts by hospital billing servicers to recover third-party insurance payments, the FDCPA has not applied, as there was no intent to induce payment by the plaintiff-patient, but rather to bill a third-party insurance carrier. In one such case, a hospital's billing servicer sent communications directly to the plaintiff seeking information on third-party payers for his accident-related medical treatment and announcing the filing of hospital liens against those third-party payers, Geico and State Farm. *Hamilton*, 2015 WL 5693610, at *2–3. The court analyzed the servicer's communications and determined that even though they were sent to the plaintiff, he was not the object of the collection activity and thus the communications fell outside the scope of the FDCPA. *Id.* at *2.

In a similar case involving communications with a third-party insurer, the court noted that the plaintiff's FDCPA claim "makes no sense in light of the evidence that plaintiff had insurance, the tortfeasor had insurance, and the Hospital never billed him for any of the charges he incurred for treatment." *Lange*, 2020 WL 1302512, at *6. The plaintiff in that case had also received medical treatment for injuries sustained in an auto accident. *Id.* at *1. When the defendant sent notice of hospital liens to the plaintiff's insurer and the tortfeasor's insurer, the Court concluded that the FDCPA did not apply:

27

> [E]very indication is that the purpose of such communications is to collect and process information about third-party payer claims and not to induce the consumer himself to pay his debt to the hospital.  In fact, as noted above, during the relevant time period, defendant never attempted to collect any amounts directly from plaintiff.

*Id.* at *6–7 (quotations and citation omitted).

So too here.  Medlytix submitted a claim to a third-party auto insurer.  Am. Compl. ¶ 83.  This communication *to State Farm* was not directed toward Plaintiff and is plainly not an attempt to collect a debt from her.  *See* Ex. A.  The billing package is addressed to and says, "bill to" State Farm, explaining that Plaintiff's "medical treatment costs are covered under [an] automobile insurance policy" issued by State Farm.  *Id.* at 1.  It also states, "On behalf of EMERGENCY COVERAGE CORP., Medlytix has billed the following *carrier* . . . : STATE FARM (R) AFFILIATE."  *Id.* at 3 (emphasis added).

Nor was the account at issue a consumer debt under the FDCPA, which is defined as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes."  15 U.S.C. § 1692a(5).  Medlytix's claim to State Farm was not based on a transaction for goods or services but an obligation to pay arising in tort – an auto accident involving Plaintiff and the at-fault driver through which State Farm became responsible for Plaintiff's medical treatment costs.

Courts have repeatedly held that an auto accident resulting in damages owed by one party is not a consensual transaction creating a consumer debt within the meaning of the FDCPA; instead, the obligation to pay arises from one party's wrongdoing without the other's consent under tort law.  *See Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1371 (11th Cir. 1998) ("Because Hawthorne's alleged obligation to pay Mac Adjustment for damages arising out of an

28

accident does not arise out of any consensual or business dealing, plainly it does not constitute a 'transaction' under the FDCPA.").  In other words, if money is owed "as the result of a tort," that "does not satisfy the 'transaction' requirement of the FDCPA."  *Campbell v. Douglas Knights & Assocs., Inc.*, No. 21-CV-01667-JCS, 2021 WL 1734896, at *5 (N.D. Cal. May 3, 2021).[4] Medlytix submitted a claim to the tortfeasor's insurer, based on the insurer's obligation to pay arising from the tort of its insured.  The claim alleged thus is not a consumer debt.

Plaintiff cannot escape this reality with the conclusory assertion that Medlytix "represent[ed]" to her counsel that Plaintiff "remained" responsible for the amount Medlytix billed to State Farm.  Am. Compl. ¶ 83.  Even when communications were made directly to the plaintiff, courts have denied FDCPA claims where the defendant sought to recover from a liability insurer.  For instance, where a servicer communicated with the plaintiff about his medical expenses and the hospital's liens, the court found "nothing in the communications to show their purpose was to induce [plaintiff] himself, rather than the third-party payers, to pay [plaintiff's] debt to the hospital."  *Hamilton*, 2015 WL 5693610, at *7.  Likewise, the FDCPA did not apply when a letter to a patient stating the balance due for his accident-related treatment and seeking insurance information gave "every indication" that the letter was "collecting information to process third-party-payor claims" rather than trying "to induce plaintiff to contact the Hospital to discuss debt-settlement options."  *Gould*, 876 F. Supp. 2d at 1025.

---

[4] *See also Rodolakis v. Safety Ins. Co.*, 327 F. Supp. 3d 274, 277 (D. Mass. 2018) (no consumer debt under the FDCPA where "plaintiff's obligation to Safety came into being as a result of an automobile accident and the fact that, having reimbursed plaintiff for the damage to his vehicle, Safety has an equitable right to recoup its payment from any funds plaintiff might receive from the other driver's insurance company for the same damage"); *Kazmi v. CCS Com., LLC*, No. 3:14-CV-06132, 2015 WL 4392836, at *2 (D.N.J. July 15, 2015) ("Defendant's attempt to collect from Kazmi also arises out of an automobile accident. The Court is not persuaded by Plaintiff's argument that his claim is different because he was not the tortfeasor in the accident . . . Therefore, Kazmi's claim against CCS does not constitute a 'debt' under the FDCPA.").

Plaintiff cannot plausibly conclude – without factual support – that Medlytix, whose sole role was to bill State Farm, represented that Plaintiff "remained" responsible for the amount Medlytix had billed *to State Farm*.  Plaintiff acknowledges that Medlytix improves healthcare cost recovery through "third-party payments from commercial insurance carriers and government aid" (Am. Compl. ¶ 21), *not* by collecting money from individuals.  She alleges that Medlytix "bill[s] for Third Party Liability claims, including Motor Vehicle Accidents" by "identify[ing] the tortfeasor and applicable liability insurance." *Id.* ¶¶ 22, 28.  Indeed, Plaintiff herself explains that her counsel allocated the proceeds of her personal injury settlement *from the tortfeasor*. *Id.* ¶ 53.  Thus, her conclusory assertion about what Medlytix allegedly represented to her counsel does not show that she was the "object of collection activity" or that Medlytix sought to collect a consumer debt. *Hardnett*, 204 F. Supp. 3d at 859.

Accordingly, Plaintiff fails to plead an FDCPA claim because she was not the object of collection activity arising from a consumer debt.

## <u>CONCLUSION</u>

Because the Complaint fails to state a claim against Medlytix, the Court should dismiss all claims against Medlytix with prejudice.

Dated:  April 1, 2024

*/s/ Bryan A. Fratkin*
Bryan A. Fratkin (VSB No. 38933)
Katherine E. Lehnen (VSB No. 92357)
McGuireWoods LLP
800 East Canal Street
Richmond, VA 23219
Tel.: (804) 775-1000
Fax: (804) 775-1061
bfratkin@mcguirewoods.com
klehnen@mcguirewoods.com

*Counsel for Defendant Medlytix, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on April 1, 2024, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.


<u>*/s/ Bryan A. Fratkin*</u>
Bryan A. Fratkin

*Counsel for Defendant Medlytix, LLC*